**EXHIBIT D**

                                                                            1

```
 1                    UNITED STATES DISTRICT COURT
 2                    SOUTHERN DISTRICT OF NEW YORK
 3   ------------------------------x
 4   SHEA DEVELOPMENT CORP,
 5   et al.,
 6               Plaintiffs
 7                                       DOCKET NO.: CV-07-11201 (DLC)
 8        -vs-                           New York, New York
 9                                       July 10, 2008
10   CHRISTOPHER WATSON, et al.,
11               Defendants
12   ------------------------------x
13       TRANSCRIPT OF CIVIL CAUSE FOR SETTLEMENT CONFERENCE
14         BEFORE THE HONORABLE GABRIEL W. GORENSTEIN
15                UNITED STATES MAGISTRATE JUDGE

16   A P P E A R A N C E S:
17   For the Plaintiffs:         STEPHEN E. BARIL, ESQ.
18                               Williams Mullen P.C.
19                               1021 East Cary Street, 17th Floor
20                               Richmond, VA  23219

21                               BRENDAN J. DOWD, ESQ.
22                               O'Melveny & Myers LLP
23                               7 Times Square
24                               New York, NY  10036

25                               FRANCIS J. MOONEY, JR., ESQ.
26                               Dunnington Bartholow & Miller LLP
27                               1359 Broadway, 6th Floor
28                               New York, NY  10018


29   Audio Operator:             No Audio Operator

30         Proceedings Recorded by Electronic Sound Recording
31            Transcript Produced by Transcription Service
32   ----------------------------------------------------------
33                        KRISTIN M. RUSIN
34                      217 Pine Meadows Circle
35                         Hickory NC 28601
36                      kmrusin@earthlink.net
```

2

| | | |
|---|---|---|
| 1 | ADDITIONAL APPEARANCES | |
| 2 | For the Defendants: | JAMES E. DAVIES, ESQ. |
| 3 | | Landman Corsi Ballaine |
| 4 | | & Ford P.C. |
| 5 | | 120 Broadway, 27th Floor |
| 6 | | New York, NY  10271 |

3

```
 1         (Recording on)
 2         THE CLERK:  -- versus Watson, docket zero seven civil
 3   one one two zero one.
 4         Counsels, please state your name for the record and
 5   introduce your clients.
 6         MR. BARIL:  My name is Steve Baril.  I represent the
 7   plaintiff.
 8         With me is Brendan Dowd -- he's with the O'Melveny
 9   firm -- who is counsel of record for the plaintiff in the
10   companion state court proceeding pending in the Supreme Court
11   of New York.
12         Behind me, to my right, is Frank Wilde, who is the
13   chairman and CEO of formerly Shea Development, now Riptide.
14         And standing directly behind me is Frank Mooney of
15   the Dunnington firm, whose firm initiated the lawsuit back in
16   December of 2007 and whose firm actually handled the merger and
17   acquisition between these parties in 2007.
18         THE COURT:  Okay.
19         MR. DAVIES:  Yes, Your Honor.  James Davis, from
20   Landman Corsi Ballaine & Ford.  I represent the defendant,
21   Christopher Watson, who's standing next to me.
22         THE COURT:  Okay.
23         Welcome, everyone.  You can be seated.  Let me tell
24   you a little bit about our process.  First --
25         (Audio gap)
```

4

1   THE COURT: -- so I'm asking the clerk to turn off
2   the record.
3       (Recorder off/recorder on)
4       THE COURT: All right. We're back on the record.
5   The parties have engaged in settlement negotiations, and we've
6   reached a deal. I'm going to try saying the terms of that deal
7   and will give -- after I do each term, I'll just check with the
8   attorneys that I've correctly stated it. And after I'm
9   finished, I'll ask the clients present whether they're agreeing
10  to it.
11      The parties do expect to do some paperwork on this
12  deal. However, they have reached an agreement as is going to
13  be reflected during this conference. So even in the absence o
14  the paperwork, this is an enforceable settlement. All right.
15      The tender of stocks and warrants that has been made
16  by Mr. Watson will be accepted. He represents that these are
17  all the stocks and warrants and that's going to be verified by
18  the plaintiff.
19      Next is all pending litigation is to be dismissed
20  with prejudice, and appropriate releases from all parties --
21  from parties to that litigation.
22      Next is the defendant, Mr. Watson, is going to be
23  personally responsible for whatever tax liability is determined
24  to exist with respect to the IRS and Virginia with respect to
25  the particular tax problem that's been discussed.

5

1    As part of the process of determining that tax
2    liability, Mr. Watson is going to be responsible for hiring any
3    accountants that he needs in order to accomplish that.  He will
4    also have authority, final authority, with respect to any
5    settlement of that tax liability with either the IRS or
6    Virginia.
7         That tax liability is -- there's going to be some
8    money held in escrow specifically for the purpose of paying
9    that tax liability, but that money is going to be the property
10   of Mr. Watson to be released to him for the purpose of the
11   payment of that tax liability, and any remaining money will go
12   to him personally.
13        The plaintiff will return to Mr. Watson -- will
14   transfer to Mr. Watson the GSA MOBIS contract, a BMW, and
15   certain business equipment that's been the subject of the
16   settlement letters that every party appears to be familiar
17   with.
18        The non-compete clauses that are in the contracts of
19   any Bravera employees and of Mr. Watson will be released and
20   deemed null and void from this day forward.
21        The plaintiff will have the option of terminating the
22   Reston lease on thirty days' notice.
23        The escrow, by the way, will be put in an interest-
24   bearing account that Mr. Watson will arrange and, of course,
25   any interest earned on that will be his property.  All right.

6

```
 1          I'm going to ask the attorneys if there are any
 2   corrections -- oh, and the money.  The amount of money in
 3   escrow is two hundred -- to be put in escrow that I mentioned
 4   is two hundred seventy-five thousand, and Mr. Watson is to be
 5   paid in cash the amount of one hundred seventy-five thousand.
 6          And I don't think we specifically said it, but
 7   obviously, releases need to be executed by any parties to this
 8   litigation, general releases.  And the payment should be made
 9   within thirty days of the execution, I would say, of any -- of
10   the releases.  Okay.
11          Does anyone want to add or change any terms that I've
12   said?
13          MR. DAVIES:  Just a clarification, Your Honor.  The
14   two hundred and seventy-five thousand dollars that is to be
15   held in escrow for payment of any tax liability, the remainder
16   of which is to be released to Mr. Watson or his holding company
17   -- that is to be funded by the plaintiffs, is that correct?
18          THE COURT:  That's correct.
19          MR. DAVIES:  Thank you.
20       (Off the record discussion)
21       (Recorder off/recorder on)
22          THE COURT:  -- some minor corrections and additional
23   terms.
24          Mr. Davies?
25          MR. DAVIES:  Yes.  The parties have agreed that the
```

1  two hundred and seventy-five thousand dollars that is to be
2  delivered in escrow will be available for delivery in escrow in
3  fourteen days and will be so delivered.
4          With respect to the remaining one hundred and
5  seventy-five thousand dollars in cash, that cash will be
6  forwarded to my office as the attorney for Mr. Watson or
7  pursuant to wiring instructions fifteen days after execution
8  and completion of the final settlement agreement.
9          THE COURT: Something else from you, Mr. Baril, or
10 your colleague?
11         MR. DOWD: This is Mr. Dowd. Yeah. With the -- Your
12 Honor, with the GSA MOBIS contract, both parties understand
13 that this is going to require the consent of the GSA.
14 Therefore, what -- therefore, what Riptide will be doing is
15 making its best efforts to novate the contract and obtain the
16 GSA's consent to have this contract be in Mr. Watson's name or
17 Intellectus's name.
18         MR. DAVIES: So stipulated.
19         THE COURT: Okay.
20         Any other terms? Mr. Davies?
21         MR. DAVIES: Nothing, Your Honor.
22         THE COURT: Mr. Baril?
23         MR. BARIL: No, sir.
24         THE COURT: Okay. Okay.
25         So, Mr. Baril, is this your understanding of the

8

```
 1  agreement as we've stated it here on the record today?
 2          MR. BARIL: It is, Your Honor.
 3          THE COURT: Mr. Davies, is it your understanding?
 4          MR. DAVIES: Yes, Your Honor.
 5          THE COURT: Mr. Wilde, are you agreeing to this on
 6  behalf of Shea, Riptide, and any other related entities?
 7          MR. WILDE: Yes, Your Honor.
 8          THE COURT: Mr. Watson, are you agreeing to this on
 9  behalf of all -- of Intellectus, you yourself, and any other
10  entities you control?
11          MR. WATSON: Yes, Your Honor.
12          THE COURT: Okay.
13          Thank you, everything.
14          MR. DAVIES: Thank you, Your Honor.
15          MR. BARIL: Thank you.
16          THE COURT: Oh, one other thing. This is going to be
17  confidential, which means the parties are only to tell
18  accountants, lawyers, immediate family members, or if they
19  might be required to disclose anything about it by law or
20  subpoena.
21          Anything else from anybody?
22          MR. BARIL: May we have a copy?
23          THE COURT: You can order it. I'll give you a form
24  to do that.
25          MR. BARIL: Thank you.
```

9

1   THE COURT:  All right.
2   Thank you, everyone.
3   MR. DAVIES:  Thank you, Your Honor.
4                *    *    *    *    *