**EXHIBIT G**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

SHEA DEVELOPMENT CORP., BRAVERA, INC.,
and IP HOLDING OF NEVADA CORP.

                Plaintiffs,

v.                                                            07 Civ. 11201 (DLC) (GWG)

CHRISTOPHER WATSON and ELIZABETH ANNE
CONLEY,

                Defendants.

---------------------------------------------------------------------X

## DECLARATION OF FRANCIS E. WILDE

I, Francis E. Wilde, Esq., hereby declare as follows:

1.      I am the CEO of Riptide Worldwide, Inc., formerly known as Shea Development Corp. ("Shea"), the plaintiff in this action.

2.      At the mediation on July 10, 2008, Shea desired to "unwind" the Merger of Bravera into Shea as far as reasonably practicable.

3.      It was imperative to Shea that Christopher Watson ("Watson") return all Shea stock and warrants and provide Shea with a full and complete release. We believe we had accomplished these goals with the Settlement on July 10, 2008.

4.      In mediation, Watson represented that he had "tendered" all Shea stock and warrants. I could not verify his representation at the time. We agreed that Shea would have the right to verify whether Watson had, in fact, returned all Shea stock and warrants.

5.      Thereafter, Shea determined that Watson had never "tendered" any stock or warrants to Shea.

6. Shea further determined that Watson had been issued 3,300,000 shares of Shea stock and four (4) warrants to purchase an additional 8,375,500 shares. See Shea Ex. 2.

7. At mediation, the parties never discussed the issue of indemnification. Had Watson raised it, it would have been a "deal breaker."

8. During the second conference with Judge Gorenstein on July 29, 2008, Judge Gorenstein stated that the Settlement does not address the issue of indemnification and is silent on this point.

9. Later that day, when I participated in a subsequent telephone conference with Watson and his counsel, I thought the issue of indemnification had been put to rest and the only remaining issues related to (i) fashioning a transition plan for the FEMA Contract, and (ii) adopting a timeline for an orderly "closing" of the Settlement.

10. Frankly, I was surprised to learn about Watson's refusal to return all Shea stock and warrants, together with a general release, unless Shea gave in to his new demand for indemnification.

11. I was further surprised to learn Watson was upset that Shea had wiped his source code and software from the business equipment. I specifically stated in open court in Watson's presence on July 10, 2008, that I had instructed Shea personnel to do this in response to threats by Watson's attorneys to sue Shea for allegedly violating the parties' Licensing Agreement.

12. I understand that Watson now claims certain business equipment returned to him from storage in Florida is deficient in some respect. To the best of my knowledge based upon reasonable inquiry, the equipment was returned to Watson in the same condition it was in when Shea took possession at the time of the Merger.

13. Watson now claims "time is of the essence." I never agreed to any such term. I agreed that upon completion of the FEMA Contract, Shea would transfer to Watson the leased premises in Reston, Virginia, the business equipment currently being used to service the FEMA Contract, as well as the personnel working on the contract.

14. Shea stood ready, willing and able to perform its end of the Settlement if and when Watson decided to perform his end of the bargain.

I declare that the foregoing declarations are correct under the penalty of perjury.

Dated: August 29, 2008

_____
Francis E. Wilde, CEO
Riptide Worldwide, Inc., f/k/a
Shea Development Corp.

1651854v1