UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

CHRISTOPHER WATSON and                    Case No.:  11 Civ. 0874 (PAC)
INTELLECTUS, LLC

Plaintiffs,

vs.

RIPTIDE WORLDWIDE, INC. (F/K/A SHEA
DEVELOPMENT CORP.), FRANCIS E.
WILDE, TOMMY E. WHEELER, E. JOSEPH
VITETTA, JR., RICHARD CONNELLY and
PHILIP E. LOEFFEL

Defendants.

-------------------------------------------------------X

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PHILIP LOEFFEL'S
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

---

CARROLL McNULTY & KULL LLC
570 Lexington Avenue, 8th Floor
New York, New York 10022
(212) 252-0004

Attorneys for Defendant
PHILIP E. LOEFFEL

On the Brief:
Joseph P. McNulty, Esq.
Teresa M. Cinnamond, Esq.

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF RELEVANT FACTS ...........................................................................3

LEGAL ARGUMENT ........................................................................................................7

    Standard Governing a Motion to Dismiss ...................................................................7

I.      COUNTS XII, XIII AND XV ARE TIME-BARRED ..........................................8

II.     NO INDIVIDUAL LIABILITY HAS BEEN PROPERLY PLEAD
       AGAINST MR. LOEFFEL ...................................................................................9

III.    PLAINTIFFS ARE PRECLUDED FROM RELITIGATING ISSUES
       THAT WERE PREVIOUSLY LITIGATED AND RESOLVED
       IN PRIOR LAWSUITS ........................................................................................12

IV.    EACH INDIVIDUAL COUNT ALSO FAILS TO STATE A CAUSE
       OF ACTION AGAINST MR. LOEFFEL AS A MATTER OF LAW ...............16

        a.     Count XII - Trespass to Chattels ..............................................16

        b.     Count XIII Conversion ..............................................................17

        c.     Count XIV Tortious Interference with
             Prospective Economic Advantage .............................................17

        d.     Count XV Computer Fraud and Abuse Act................................20

        e.     Counts XVI, XVII XVIII for Fraudulent Conveyance ..............21

CONCLUSION ....................................................................................................................23

# TABLE OF AUTHORITIES

**CASES**

Algomod Technologies Corp. v. Price,
  65 A.D.3d 974, 886 N.Y.S.2d 120 (N.Y. App. Div. 2009) .................................................10, 11

Allocco Recycling, Ltd. v. Doherty,
  378 F. Supp. 2d 348 (S.D.N.Y. 2005) ...................................................................................18

Am. Feeds & Livestock Co., Inc. v. Kalfco, Inc.,
  149 A.D.2d 836, 540 N.Y.S.2d 354 (N.Y. App. Div. 1989) .........................................................11

Ashcroft v. Iqbal,
  __ U.S. __, 129 S. Ct. 1937 (2009).....................................................................................8

Bell Atlantic Corp. v. Twombly,
  550 U.S. 544 (2007)........................................................................................................7, 8

Cilco Cement Corp. v. White,
  55 A.D.2d 668, 390 N.Y.S.2d 178 (N.Y. App. Div. 1976) .................................................21, 22

City of Amsterdam v. Daniel Goldreyer, Ltd.,
  882 F. Supp. 1273 (E.D.N.Y. 1995) .....................................................................................16

Clark-Fitzpatrick, Inc. v. Long Island R. Co.,
  70 N.Y.2d 382, 516 N.E.2d 190 (1987).................................................................................16

Dangler v. New York City Off Track Betting Corp.,
  193 F.3d 130 (2d Cir. 1999) ..............................................................................................7

Di Nardo v. L & W Indus. Park of Buffalo, Inc.,
  425 N.Y.S.2d 704 (N.Y. App. Div. 4th Dept. 1980) ........................................................10, 11, 12

Gertler v. Goodgold,
  107 A.D.2d 481, 487 N.Y.S.2d 565 (N.Y. App. Div. 1985) ...................................................18

Givoldi, Inc. v. United Parcel Serv.,
  729 N.Y.S.2d 25 (N.Y. App. Div. 1st Dept. 2001)..................................................................16

Grandon v. Merrill Lynch & Co.,
  147 F.3d 184 (2d Cir.1998) ...............................................................................................7

Henneberry v. Sumitomo Corp. of Am.,
  415 F. Supp. 2d 423 (S.D.N.Y. 2006) ...............................................................................18, 19

In re Allou Distributors, Inc.,
  404 B.R. 710 (Bankr. E.D.N.Y 2009) ...................................................................21

In re Jacobs,
  394 B.R. 646 (Bankr. E.D.N.Y. 2008) ..................................................................21

In re Livent, Inc. Noteholders Securities Litig.,
  151 F. Supp. 2d 371 (S.D.N.Y. 2001) ...................................................................7

In re Sharp Int'l Corp.,
  403 F.3d 43 (2d Cir. 2005) ...................................................................................22

Inc. Vill. of Saltaire v. Zagata,
  280 A.D.2d 547 , 720 N.Y.S.2d 200 (N.Y. App. Div. 2001) .................................8

Interoceanica Corp. v. Sound Pilots, Inc.,
  107 F.3d 86 (2d Cir. 1997) ..................................................................................13

Jaghory v. N.Y. State Dep't of Educ.,
  131 F.3d 326 (2d Cir. 1997) ..................................................................................8

Jami Mktg. Services, Inc. v. Howard,
  86 CV 3352, 1988 WL 46106 (E.D.N.Y. 1988) ...................................................11

Joan Hansen & Co., Inc. v. Everlast World's Boxing Headquarters Corp.,
  296 A.D.2d 103 , 744 N.Y.S.2d 384 (N.Y. App. Div. 2002) .................................9

Joseph v. Insureco, Inc.,
  25 A.D.3d 764, 809 N.Y.S.2d 518 (N.Y. App. Div. 2006) ....................................8

Kassner v. 2nd Ave. Delicatessen, Inc.,
  496 F.3d 229 (2d Cir. 2007) ..................................................................................8

Key Bank of New York v. Grossi,
  642 N.Y.S.2d 403 (N.Y. App. Div. 3d Dept. 1996) .............................................17

Kirch v. Liberty Media Corp.,
  449 F.3d 388 (2d Cir. 2006) ...........................................................................18, 19

Koppel v. 4987 Corp.,
  167 F.3d 125 (2d Cir. 1999) ..................................................................................8

Kubin,
  supra, 801 F. Supp. .............................................................................................17

Leptha Enterprises, Inc. v. Longenback,
 90 CIV. 7704 (KTD), 1991 WL 183373 (S.D.N.Y. 1991) ........................................12

Mandelblatt v. Devon Stores, Inc.,
 132 A.D.2d 162, 521 N.Y.S.2d 672 (1st Dept.1987)........................................18, 22

Morris v. New York State Dept. of Taxn. and Fin.,
 623 N.E.2d 1157 (N.Y. 1993)........................................................................9

Norris v. Grosvenor Mktg. Ltd.,
 803 F.2d 1281 (2d Cir. 1986) ........................................................13, 14, 15

Olaes Enterprises, Inc. v. A.D. Sutton & Sons, Inc., 09 CIV 8680 CM PED,
 2010 WL 3260064 (S.D.N.Y. Aug. 6, 2010)................................................13

Penrose Computer Marketgroup, Inc. v. Camin,
 682 F. Supp. 2d 202 (N.D.N.Y. 2010) ........................................................20

Petkanas v. Kooyman,
 303 A.D.2d 303, 759 N.Y.S.2d 1 (N.Y. App. Div. 2003) ..............................10

Register.com, Inc. v. Verio, Inc.,
 356 F.3d 393 (2d Cir. 2004) ....................................................................16

State of N.Y. v. Shore Realty Corp.,
 759 F.2d 1032 (2d Cir. 1985) ..................................................................11

Univ. Sports Pub. Co. v. Playmakers Media Co.,
 725 F. Supp.2d 378 (S.D.N.Y. 2010) ....................................................20, 21

Uzdavines v. Weeks Marine, Inc.,
 418 F.3d 138 (2d Cir. 2005) ....................................................................13

**STATUTES**

18 U.S.C. § 1030(g)........................................................................................8

18 U.S.C.A. § 1030 ........................................................................................6

18 U.S.C.A. § 1030(e)(1) ..............................................................................21

N.Y. C.P.L.R. 201 (McKinney)........................................................................8

New York Debtor and Creditor Law §§ 274 ............................................6, 21

**RULES**

Fed.R.Civ.P. 9(b)..................................................................................................22, 23

FRCP 12(b)(6) ....................................................................................................1, 7

Defendant Philip Loeffel, by his attorneys, Carroll McNulty & Kull LLC, respectfully submits this Memorandum of Law in support of his Motion to Dismiss the Complaint of Plaintiffs Christopher Watson ("Watson") and Intellectus, LLC ("Intellectus") (collectively, "Plaintiffs") pursuant to FRCP 12(b)(6) for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

Plaintiffs' Complaint is the latest in a series of lawsuits arising out of a Merger Agreement between Watson's former company Bravera, Inc. ("Bravera") and Riptide Worldwide, Inc. (formerly Shea Development Corporation) ("Riptide"), an Employment Agreement entered between Watson and Riptide, and a Software License Agreement entered by Watson's company Intellectus and the Riptide subsidiary IP Holding of Nevada Corp.  Watson's dispute clearly lies with Riptide rather than Mr. Loeffel individually since (1) it was Riptide that allegedly failed to honor its obligations under the Software License Agreement and allegedly failed to return intellectual property to Watson and (2) it is Riptide that apparently failed to pay Watson $450,000 pursuant to a July 10, 2008 Settlement Agreement which was reduced to a Settlement Judgment entered by this court in a prior lawsuit.   Despite the fact that this prior Settlement Judgment, entered on February 3, 2009, incorporated this court's finding of fact that the issue of the return of computer equipment and software had been waived or resolved to the Plaintiffs' satisfaction, Watson now seeks to proceed with yet another action alleging the same failure to return the same intellectual property to him.

Apparently driven by Riptide's inability to pay him pursuant to the Settlement Judgment, Watson now attempts to pursue claims against Mr. Loeffel, Riptide's former President, in his individual capacity, by mischaracterizing breach of contract claims arising from the alleged

1

violation of the Software License Agreement as tort claims for "Trespass to Chattels" (Count XII) and 'Conversion' (Count XIII).  Plaintiffs allege Tortious Interference with Prospective Economic Advantage (Count XIV) against Mr. Loeffel based upon the alleged "negligent management" of the Bravera subsidiary, which failed.  Plaintiffs also assert claims against Mr. Loeffel for violation of the Computer Fraud and Abuse Act (Count XV) and for alleged "fraudulent conveyances" in the form of salary and performance-based bonuses paid to Mr. Loeffel (Counts XVI, XVII and XVIII), even though there are no allegations that they were inconsistent with Mr. Loeffel's Employment Agreement.

As an initial matter, Plaintiffs' claims of Trespass to Chattels, Conversion and Violation of the Computer Fraud and Abuse Act are clearly time-barred under the contractually agreed-upon two-year statute of limitations (and the two year statute of limitations provided for in the Computer Fraud and Abuse Act).   Moreover, Plaintiffs have asserted nothing more than conclusory allegations in support of their claims against Mr. Loeffel in his individual capacity for Trespass to Chattels, Conversion, Tortious Interference with Prospective Economic Advantage, Violation of the Computer Fraud and Abuse Act ("CFAA"), and Fraudulent Conveyance.  Mr. Loeffel is not alleged to have committed any separate tort independent of his actions as a director or officer of Riptide that could possibly subject him to personal liability.

In addition, the Settlement Agreement entered between Riptide and Watson settled all disputes arising from the Software License Agreement and is therefore enforceable as to Mr. Loeffel as a former officer of Riptide and precludes these claims from being resurrected again. Under the doctrines of res judicata and collateral estoppel, Plaintiffs are precluded from re-litigating what amounts to the same claims, concerning Watson's alleged right to the transfer of

computer equipment and software that were previously resolved between Riptide and Watson prior to the entry of a Settlement Judgment by this Court in a prior federal court action.

## STATEMENT OF RELEVANT FACTS

Defendant Philip Loeffel formed Riptide Software, Inc. ("Riptide Software") in 1995 and served as its President and CEO until 2007 (Loeffel Decl. ¶ 2).  Following negotiations between Mr. Loeffel and Riptide CEO Francis Wilde ("Wilde") in early 2007, Riptide merged with Riptide Software on July 16, 2007. (Wilde Decl. ¶ 3).  Loeffel executed an Employment Agreement with Riptide, pursuant to which Mr. Loeffel became Riptide's President on November 19, 2007.  (Loeffel Decl. at ¶ 4).  On July 16, 2007, Riptide also closed on a merger agreement with Watson's company, Bravera.  In connection with the Riptide-Bravera merger, Riptide executed a "Software License and Asset Purchase Agreement" ("Software License Agreement") with another Watson company, Intellectus, LLC. (Compl. Ex. 3).  The Software License Agreement provided that for a one-year "License Term," from July 16, 2007 to July 15, 2008, Intellectus granted Riptide a "royalty-free, worldwide and exclusive right and license" with respect to various "Intellectual Property Assets."

On or about October 1, 2007, shortly after the Merger Agreement, Employment Agreement and the Software License Agreement were executed, Mr. Watson abruptly resigned from his position at Riptide.  (Wilde Decl. ¶ 6).  Riptide filed a lawsuit against Mr. Watson in the United States District Court for the Southern District of New York on December 12, 2007 styled Shea Dev. Corp. et al. v. Watson et al., Civil Docket No. 1:07-cv-12201-DLC-GWG ("the prior federal court action"), alleging fraud, breach of fiduciary duty, and breach of the merger and employment agreements against Watson.  (Wilde Decl. ¶ 6) (Cinnamond Decl. Ex. B).

Shortly thereafter, on January 15, 2008, Watson filed a lawsuit against Riptide styled Watson v. Riptide Worldwide, Inc. in the Supreme Court of the State of New York, New York County, Index No. 600114/08 ("the prior state court action"), alleging breach of the Merger Agreement, Employment Agreement and Software License Agreement and seeking declaratory and injunctive relief against Riptide with respect Watson's rights under the Software License Agreement.  (Wilde Decl. ¶6) (Cinnamond Decl. Ex. C).  Plaintiffs specifically alleged in the state court action that Riptide had breached the Software License Agreement, was no longer entitled to utilize the software and demanded the return of all right title and interest in the software and its derivatives.  (Cinnamond Decl. Ex. C, ¶¶ 78-80).  More specifically, Watson alleged that "IP Holding . . . ha[s] developed 'Derivative Works' based on Intellectus' intellectual property, but they have failed to convey their right, title and interest to those derivative works as required by the License agreement."  (Cinnamond Decl. Ex. C, ¶ 108).

Ultimately, the prior federal and state court actions were resolved by a Settlement Agreement entered before the Hon. Gabriel W. Gorenstein of this Court on July 10, 2008 (Cinnamond Decl. Ex. D) which was reduced to Settlement Judgment on February 3, 2009, as discussed below.[1]  (Wilde Decl. ¶¶ 8, 16) (Cinnamond Decl. Ex E).  As part of that Settlement Agreement, the parties agreed to dismiss all pending litigation against each other with prejudice.  (Wilde Decl. ¶ 8).  (Cinnamond Decl. Ex. E ¶ 3).  Further, Riptide was to "return to Mr. Watson…a BMW, **and certain business equipment** that's been the subject of the settlement letters that every party appears to be familiar with."  (emphasis supplied) (Wilde Decl. ¶ 8) (Cinnamond Decl. Ex. D).

---

[1] Similarly, on July 15, 2008, the Supreme Court of New York entered a Final Order resolving then-pending motions in the state court action as moot and marking the case "settled."  (Cinnamond Decl. Ex. K).

On or about August 13, 2008, Watson personally arrived at Riptide's facilities in Florida to retrieve the business equipment at issue.  (Loeffel Decl. ¶ 11) (Wilde Decl. ¶ 9).  Watson placed his initials in numerous locations on an inventory sheet confirming his receipt of each piece of computer equipment.  (Loeffel Decl. ¶ 11) (Wilde Decl. ¶ 9).

Mr. Watson apparently, however, was not satisfied that all intellectual property had been returned to him and on or about August 25, 2008, he filed an Order to Show Cause seeking to enforce the settlement and to require Riptide to return the software and derivative works that had been "wiped clean" from computer servers returned to Watson.  (Wilde Decl. ¶ 11) (Cinnamond Decl. Ex. G ¶ 4).  In opposition, Mr. Wilde, on behalf of Riptide, disputed that the business equipment should have been returned with the software on it.  (Wilde Decl. ¶ 12) (Cinnamond Decl. Ex. G).

While Riptide believed that its prior deletion of materials was proper, at the specific direction of Mr. Wilde and Riptide's Corporate Secretary, Joe Vitetta, employees of Riptide working in the IT Department retrieved the software that had been deleted from back-up files that were stored off-line as part of the company's back-up procedures.  (Wilde Decl. ¶ 12).  Mr. Loeffel was specifically instructed by Mr. Wilde and Mr. Vitetta to mail that software on a disk via Federal Express to Watson on October 16, 2008.  (Wilde Decl. ¶ 13) (Loeffel Decl. ¶ 13-15).

Following two settlement conferences, Magistrate Judge Gorenstein issued a Report and Recommendation on October 27, 2008.  Relevant to the instant motion to dismiss, Judge Gorenstein noted that "[i]t is now clear that with respect [to] the disputes as to . . . the transfer of . . . office equipment[] and **intellectual property**, the parties are either withdrawing their requests regarding these matters or are satisfied with their resolution."  (emphasis supplied) (Wilde Decl. ¶ 14) (Cinnamond Decl. Ex. I).   On or about November 6, 2008, Watson filed

objections to Judge Gorenstein's Report and Recommendation.  (Wilde Decl. ¶ 15) (Cinnamond Decl. Ex. J).  Notably, the objections related solely to the failure by Riptide to pay Watson the sums of money that the parties had agreed to on July 10, 2008.  Watson did not assert that the equipment and software returned to him on August 13, 2008 and October 17, 2008 was insufficient to resolve Riptide's obligations as to intellectual property under the Settlement Agreement.  (Wilde Decl. ¶ 15) (Cinnamond Decl. Ex. J).

On February 3, 2009, the Hon. Denise Cote, U.S.D.J. entered a Settlement Judgment that specifically memorialized the fact that the issues with respect to Watson's complaints regarding the software had been fully resolved.  Specifically, the court noted that "the parties have already effectuated . . . [the] 'transfer of property.'"  (Wilde Decl. ¶ 16) (Cinnamond Decl. Ex. E).  Watson filed another Order to Show Cause on June 17, 2009, seeking payment from Riptide.  (Cinnamond Decl. Ex. K).  However, still consistent with the Court's Report and Recommendation and subsequent Settlement Judgment, Watson raised no argument that any software (i.e, source code or derivative works) needed to be transferred by Riptide to him.

In the Complaint filed in the instant matter, Plaintiffs allege against Mr. Loeffel, individually, counts for Trespass to Chattels (Count XII), Conversion (Count XIII), Tortious Interference with Prospective Economic Advantage (Count XIV), Violation of the Computer Fraud and Abuse Act, 18 U.S.C.A. § 1030 (Count XV) and Fraudulent Conveyance under New York Debtor and Creditor Law §§ 274 (Count XVI), 275 (Count XVII) and 276 (Count XVIII).  Only a small number of general allegations refer or relate to Mr. Loeffel and they are all conclusory.  Specifically, Plaintiffs allege as follows:

"Riptide, at the direction of defendant Loeffel, delivered to Watson a number of servers that had been in Bravera's possession on which the Software had been loaded."  (Compl. ¶ 88);

"Upon receipt of the servers, however, Watson determined that the Software and the Derivative Works had been removed or destroyed from the servers.  Thus, Riptide failed to transfer to Intellectus the 'Derivative Works' that had been developed, as required by the Software License."  (Compl. ¶ 88); and

"Despite repeated demand by Watson, on behalf of Intellectus, neither Riptide, IP Holding of Crop., [sic] Wilde, or Loeffel have returned the Software or any of the 'Derivative Works' to Intellectus." (Compl. ¶ 89).

## LEGAL ARGUMENT

### Standard Governing a Motion to Dismiss

On a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted, "the court must accept the well-pleaded factual allegations in the complaint as true."  In re Livent, Inc. Noteholders Securities Litig., 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001) (citing Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir.1998)). However, "[t]he court need not credit conclusory statements unsupported by assertions of facts or legal conclusions and characterizations presented as factual allegations."  Id.  Although the court is typically constrained to "look only to the allegations of the complaint and any documents attached to or incorporated by reference in the complaint," Dangler v. New York City Off Track Betting Corp., 193 F.3d 130, 138 (2d Cir. 1999), the court may also consider documents that, while not explicitly incorporated into the complaint, are "integral" to plaintiff's claims and were relied upon in drafting the complaint.  In re Livent, Inc. supra,151 F. Supp. 2d at 404.

To survive a motion to dismiss, a complaint must include "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556). The plausibility standard is not a "probability requirement," but requires more than a sheer possibility that a defendant has acted unlawfully. Id. The Supreme Court has held that dismissal is proper where there are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." See Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009); Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007); Koppel v. 4987 Corp., 167 F.3d 125, 127 (2d Cir. 1999); Jaghory v. N.Y. State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997).

## I.    COUNTS XII, XIII AND XV ARE TIME-BARRED

As an initial matter, three of the seven counts against Mr. Loeffel are time-barred under the applicable statute of limitations.

"An action . . . must be commenced within the time specified in this article unless a different time is prescribed by law or a shorter time is prescribed by written agreement." N.Y. C.P.L.R. 201 (McKinney) (emphasis added). See Inc. Vill. of Saltaire v. Zagata, 280 A.D.2d 547, 547-48, 720 N.Y.S.2d 200 (N.Y. App. Div. 2001)("Absent proof that the contract is one of adhesion or the product of overreaching, or that [the]altered period is unreasonably short, the abbreviated period of limitation will be enforced."); Joseph v. Insureco, Inc., 25 A.D.3d 764, 765, 809 N.Y.S.2d 518, 519 (N.Y. App. Div. 2006).

Here, Plaintiffs' counts for Trespass to Chattels (Count XII), Conversion (Count XIII), and violation of the Computer Fraud and Abuse Act (Count XV) [2] are all predicated on Plaintiffs' rights in, and Defendants' purported violation of, the Software License Agreement. As specifically alleged in counts XII, XIII and XV, those causes of action arise out of Plaintiffs' rights "pursuant to the Software License" (Compl. ¶¶ 183, 189 and 204). The Software License Agreement expressly provides that "[a]ny cause of action or claim of Licensee or Owner, accrued or to accrue because of any breach or default by the other party of any provision of this Agreement, shall survive the termination or expiration of this Agreement for a **period of two (2) years**." (See Pls.' Compl., Ex. 3).

Although Plaintiffs assert no specific date on which the Software License actually expired, Watson's Declaration, filed in August 2008 to enforce the previously entered Settlement Agreement between Watson and Riptide establish that two years have passed since the accrual of any claims arising out of the Software License Agreement. (Wilde Decl. ¶ 11) (Cinnamond Decl. Ex. F and H) (Pls.' Compl. Ex. 3, Art. II, Para. 1). These filings by Watson himself establish his personal knowledge of the purported Trespass to Chattels, Conversion and violation of the Computer Fraud and Abuse Act by August 25, 2008 at the latest.

## II.   NO INDIVIDUAL LIABILITY HAS BEEN PROPERLY PLEAD AGAINST MR. LOEFFEL

It is well-established under New York law that "a corporation exists independently of its owners, as a separate legal entity; that the owners are normally not liable for the debts of the corporation; and that it is perfectly legal to incorporate for the express purpose of limiting the

---

[2] Count XV (Violation of the Computer Fraud and Abuse Act) is further barred by the 2-year statute of limitations contained in the CFAA itself, measured from the date of the act complained of or date of discovery of the damages. 18 U.S.C. § 1030(g)  See Smartix Int'l Corp. v. MasterCard Int'l LLC, 06 CV 5174 (GBD), 2008 WL 4444554 (S.D.N.Y. Sept. 30, 2008) aff'd, 355 F. App'x. 464 (2d Cir. 2009) (holding that "accrual is not delayed until such time that plaintiff discovers every person that it believes is responsible for the information wrongfully taken from its computer" but from the date of the discovery of the damage).

liability of the corporate owners."  Morris v. New York State Dept. of Taxn. and Fin., 623

N.E.2d 1157, 1160 (N.Y. 1993).  When seeking to hold an individual corporate defendant liable,

the "pleading must allege that the acts complained of, whether or not beyond the scope of the

defendant's corporate authority, were performed with malice and were calculated to impair the

plaintiff's business for the personal profit of the defendant."  Joan Hansen & Co., Inc. v. Everlast

World's Boxing Headquarters Corp., 296 A.D.2d 103, 110, 744 N.Y.S.2d 384 (N.Y. App. Div.

2002).  "[S]ound public policy restricts the imposition of liability on corporate officers and

directors for the acts of the corporation."  Petkanas v. Kooyman, 303 A.D.2d 303, 305, 759

N.Y.S.2d 1, 2 (N.Y. App. Div. 2003) (holding that dismissal of plaintiff's claim against

individual corporate defendant for breach of employment agreement was proper where plaintiff

failed to plead that the individual corporate defendant personally profited from the breach).  See

also Algomod Technologies Corp. v. Price, 65 A.D.3d 974, 975, 886 N.Y.S.2d 120, 121 (N.Y.

App. Div. 2009) leave to appeal denied, 14 N.Y.3d 707, 926 N.E.2d 1236 (2010) (holding that

the plaintiff's claims for tortious interference with prospective economic benefit and conversion

against individual corporate defendants were properly dismissed where the plaintiff failed "to set

forth facts showing that defendants acted for personal interests rather than those of the

corporation).

 An individual defendant "may not be held liable for inducing his corporation to violate its

contractual obligations [such as obligations under a Software License Agreement] unless his

activity involves separate tortious conduct or results in personal profit."  Di Nardo v. L & W

Indus. Park of Buffalo, Inc., 425 N.Y.S.2d 704, 705 (N.Y. App. Div. 4th Dept. 1980) (emphasis

added).  In Di Nardo, the plaintiff, a real estate agent, brought together, as seller and buyer, two

corporate defendants for the purchase of an industrial park.  Id. at 736.  The plaintiff sued the

two corporate defendants together with their directors and officers, alleging that they conspired to deprive the plaintiff of his real estate commission.  Id.  The court dismissed the plaintiffs' complaint for failure to state a claim, holding that plaintiff failed to allege that "there was tortious conduct on the part of [the president] which was separate from his conduct as officer and director of L & W or that [the president] personally profited from the scheme to avoid paying plaintiff's commission."  Id.

Although "a corporate officer who commits or participates in a tort, even if it is in the course of his duties on behalf of the corporation, may be held individually liable[,]"  Jami Mktg. Services, Inc. v. Howard, 86 CV 3352, 1988 WL 46106 (E.D.N.Y. 1988), New York courts base such findings of liability on the fact that the "corporate officer . . . controls corporate conduct and thus is an active individual participant in that conduct."  State of N.Y. v. Shore Realty Corp., 759 F.2d 1032, 1052 (2d Cir. 1985) (emphasis added).  "In general, a corporate officer or director is liable for the torts of the corporation only when he or she knowingly participated in the wrong."  Am. Feeds & Livestock Co., Inc. v. Kalfco, Inc., 149 A.D.2d 836, 837, 540 N.Y.S.2d 354, 355 (N.Y. App. Div. 1989).

For example in Am. Feeds & Livestock, the court found an officer of the defendant corporation to be individually liable for conversion where she was the "chief executive officer and sole policy maker" and where there was evidence showing that she was on notice of the wrongful possession of the plaintiffs property, knew of the plaintiff's demand for the return of that property and failed to "relinquish that wrongful possession."  Id. at 837.

Here, Plaintiffs have failed to allege any wrongdoing on the part of Loeffel aside from conclusory allegations.  In particular, Plaintiffs fail to allege that Mr. Loeffel acted in his own personal interests rather than Riptide's interests.  Algomod Technologies Corp supra, 65 A.D.3d

at 975.  Plaintiffs allege only that Mr. Loeffel ordered the "deliver[y] to Watson a number of servers that had been in Bravera's possession on which the Software had been loaded" (Compl. ¶ 88) and later concludes that Mr. Loeffel "tortiously deleted" the software.  These conclusory allegations fail to sufficiently allege that "there was tortious conduct on the part of [Mr. Loeffel] which was separate from his conduct as officer or director" of Riptide.  Di Nardo supra, 74 A.D.2d at 736, 425 N.Y.S.2d at 705.  Clearly, as demonstrated by the court papers filed by Riptide and Watson in the prior federal court action, Mr. Loeffel was acting only at the direction of Riptide's CEO, Francis Wilde and Joe Vitetta, in arranging for the storage and pick-up of computer equipment and the storage, deletion, retrieval and delivery of software to Watson. (Wilde Decl. ¶¶ 9, 13)  (Loeffel Decl. ¶¶ 10-15) (Cinnamond Decl. Exs. D, E, F, G, H, I). Furthermore, Mr. Loeffel was in no way involved in the decision to delete any software.  (Wilde Decl. ¶ 18).  Instead, pursuant to Mr. Wilde's instructions, Riptide employees in the IT Department were instructed to wipe clean the software and derivatives from the servers that Mr. Watson picked up on August 13, 2008.  (Wilde Decl. ¶ 7).  After further complaints by Mr. Watson, Mr. Loeffel subsequently was told to attempt to retrieve the deleted software which was then sent to Mr. Watson on a disk via Federal Express on October 16, 2008.  (Wilde Decl. ¶ 12; Loeffel Decl. ¶¶ 13-15).   Moreover, there clearly are no allegations that Mr. Loeffel acted for his own "personal profit,"  Di Nardo supra, 425 N.Y.S.2d at 705.

## III.  PLAINTIFFS ARE PRECLUDED FROM RELITIGATING ISSUES THAT WERE PREVIOUSLY LITIGATED AND RESOLVED IN PRIOR LAWSUITS

"[R]es judicata is applicable where a settlement agreement releases defendants, even if they were not named parties in the action."  Id.  The defensive use of res judicata is permitted when a plaintiff settles a prior pending action knowing the present defendant's role in the activities which formed the basis of the prior suit but chose not to name that defendant as a party

to that suit.  Leptha Enterprises, Inc. v. Longenback, 90 CIV. 7704 (KTD), 1991 WL 183373

(S.D.N.Y. 1991) (holding that subsequent lawsuit filed by plaintiff was barred under res judicata

principals where in second lawsuit plaintiff attempted to "relitigate identical claims now,

regardless that some novel matters were raised.").

      "Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of

protecting litigants from the burden of relitigating an identical issue with the same party or his

privy and of promoting judicial economy by preventing needless litigation."  Norris v. Grosvenor

Mktg. Ltd., 803 F.2d 1281, 1286 (2d Cir. 1986).  Collateral estoppel operates as "issue

preclusion."   Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 86, 91 (2d Cir. 1997).  New

York courts utilize the two-pronged "full and fair opportunity" test for deciding whether an issue

has been decided by prior litigation.  Norris supra, 803 F.2d at 1285.  First, the issue dispositive

of the present action must have been decided by the prior action, whether expressly or by

implication.  Id.  "Second, there must have been a full and fair opportunity to contest the

previous decision."  Id.  The Second Circuit Court of Appeals has held that "where parties intend

a stipulation to be binding in future litigation, issues to which the parties have stipulated will be

considered 'actually litigated' for collateral estoppel purposes."  Uzdavines v. Weeks Marine,

Inc., 418 F.3d 138, 146 (2d Cir. 2005); see also Olaes Enterprises, Inc. v. A.D. Sutton & Sons,

Inc., 09 CIV 8680 CM PED, 2010 WL 3260064 (S.D.N.Y. Aug. 6, 2010) (indicating that

settlement can create collateral estoppel where the parties intended it to such as where the parties

stipulate to findings of fact).

      In Norris supra, an arbitrator found in favor of the plaintiff in a dispute arising out of a

contract in which the plaintiff was entitled to a lifetime interest in a percentage of the defendant's

profits to distribute Twining Tea.  Norris, 803 F.2d at 1285.  In the first action, the plaintiff sued

13

alleging that the defendant had improperly sold its distribution rights of Twining Tea to another party, Grosvenor.   Following the defendant's payment to the plaintiff pursuant to the arbitration award, the plaintiff sued the entity with whom the defendant sold its distribution rights and Twining for inducing a breach of contract, and for tortious interference and conversion.  Id. Plaintiff sought his lifetime interest in profits from those companies.  Id.

The Second Circuit held that the plaintiff was collaterally estopped from bringing the second action, reasoning that the subsequent claims all arose out of the plaintiff's original claim to a certain percentage of the defendant's profits.  Id. at 1285.  The court further noted that the relief sought by the plaintiff was identical in both actions.  The fact that the plaintiff based his claims on new legal theories did not shield him from collateral estoppel.  Id.  The court explained that the plaintiff "was given his opportunity to argue his case to the arbitrator.  He should not now be given another bite of the cherry."  Id. at 1286.

Here, it is beyond question that the issues pertaining to the Software License Agreement have already been litigated to Plaintiffs' satisfaction such that they are now precluded from relitigating those same issues.  The Settlement Agreement entered on the record on July 10, 2008 and later memorialized by the February 3, 2009 Settlement Judgment in the prior federal action precludes all claims arising out of the alleged violation of the Software License Agreement. (Cinnamond Decl. Exs. D, E).  Plaintiffs not only sought to be bound by the terms of the Settlement Agreement entered in open court, but further sought to enforce that settlement twice by Orders to Show Cause filed on August 25, 2008 and on June 17, 2009.  (Cinnamond Decl. Exs. F, K; ).  Specifically, in the August 25, 2008 Order to Show Cause, Watson complained that "Shea's delivery of the equipment 'wiped clean' is a clear breach of the settlement agreement." Id.  However, following these complaints and the subsequent delivery of the software in dispute

14

(Loeffel Decl. ¶ 15), Watson and Intellectus did not object to Magistrate Judge Gorenstein's

Report and Recommendations that the equipment had been satisfactorily returned to Watson.

(Wilde Decl. ¶ 15) (Cinnamond Decl. Ex. J).  Plaintiffs further did not raise the issue of the

purportedly missing software in its June 7, 2009 Order to Show Cause.  (Cinnamond Decl. Ex.

K).

During all relevant times, Plaintiffs were aware that Loeffel had personally delivered the

equipment to Watson on August 13, 2008 and that Loeffel mailed the disks to Watson on

October 17, 2008.  (Loeffel Decl. ¶¶ 11,15).  Therefore, because the Orders entered in the prior

federal action expressly provided that the issue of the purported failure to return intellectual

property was satisfactorily resolved, Plaintiffs are collaterally estoppel from relitigating the same

issues in this lawsuit.  Collateral estoppel precludes these claims because Plaintiffs here should

not "now be given another bite of the cherry."  Norris supra, 803 F.2d at 1285.   As discussed

above, Plaintiffs' claims for Trespass to Chattels (Count XII), Conversion (Count XIII), and

violation of the Computer Fraud and Abuse Act (Count XV) all clearly arise out of the Software

License Agreement.  The same intellectual property referenced by Plaintiffs in this action was

also the subject of the state court action that was settled on July 15, 2008 and thereafter

discontinued.   In the prior federal action, Plaintiff Watson contended that Riptide had failed to

return the software and its derivatives in an Order to Show Cause dated August 25, 2008.

(Cinnamond Decl. Ex F, H).  However, following Riptide's return of that software and the

servers on which they were stored (Wilde Decl. ¶ 12), Plaintiff Watson rightly abandoned that

claim, resulting in a factual finding that he had done so. (Wilde Decl. ¶¶ 14-15).

Plaintiffs had a full and fair opportunity to contest Magistrate Judge Gorenstein's express

statement that the issues relating to "the transfer of . . . intellectual property" were either

withdrawn "or satisfied to [Plaintiffs'] resolution."  (Wilde Decl. ¶ 14) and Judge Cote's

statement that any required "transfer of property" had been effectuated in the Settlement

Judgment (Cinnamond Decl. Ex. E).  Thus, Watson and Intellectus should be bound by the

Court's resolution of this issue.

## IV.   EACH INDIVIDUAL COUNT ALSO FAILS TO STATE A CAUSE OF ACTION AGAINST MR. LOEFFEL AS A MATTER OF LAW

### a.   Count XII- Trespass to Chattels

A trespass to chattel occurs when a party *intentionally* damages or interferes with the use

of property belonging to another."  City of Amsterdam v. Daniel Goldreyer, Ltd., 882 F. Supp.

1273, 1281 (E.D.N.Y. 1995); See also Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 404 (2d

Cir. 2004).  However, New York courts have held that "a simple breach of contract is not to be

considered a tort unless a legal duty independent of the contract itself has been violated."  Clark-

Fitzpatrick, Inc. v. Long Island R. Co., 70 N.Y.2d 382, 389, 516 N.E.2d 190, 193 (1987).  See

also Givoldi, Inc. v. United Parcel Serv., 729 N.Y.S.2d 25, 27 (N.Y. App. Div. 1st Dept. 2001).

Plaintiffs fail to sufficiently allege a viable claim for trespass to chattels.  What Plaintiffs

characterize as a tort claim is nothing more than a claim for breach of contract since the duties

that Defendants purportedly violated arise out of "the Software License" as alleged by Plaintiffs.

(Comp. ¶ 183).   In other words, Plaintiffs' Count XII must fail because Plaintiffs have failed to

identify any legal duty, independent of the contractual obligations, that forms the basis of its

trespass claim.[3]  Stated simply, Riptide's effort to comply with the Software License

---

[3] In addition, Plaintiffs' contentions are contrary to the plain terms of the Software License Agreement itself.  As several examples, the Software License Agreement expressly contemplates that Watson was to take "reasonable steps to register and protect the Software."  (Compl. Ex. 3).  Despite that provision, Plaintiffs now complain that they were deprived of their access to that very software.  (Compl. at ¶ 181).  In addition, the Software License Agreement provides for Riptide's right to delete the source code, providing that if the License Term concluded before July 15, 2008 then all rights would "immediately terminate and revert to Owner" and either (i) Riptide would return "all embodiments of any of the Intellectual Property Assets . . . or certify the destruction of such embodiments . . . ."  (License Art II. Para. 4) (emphasis added).

Agreement's provisions regarding the affirmative destruction of intellectual property cannot reasonably be equated with intentional damage to property of the licensor.  Instead, such actions should be judged only insofar as they constitute a breach of the license agreement since Mr. Loeffel had no legal duty independent of the contract itself.

      **b.**    <u>**Count XIII Conversion**</u>

It is well settled that an action for conversion cannot be predicated on a mere breach of contract."  <u>Key Bank of New York v. Grossi</u>, 642 N.Y.S.2d 403, 404 (N.Y. App. Div. 3d Dept. 1996).  "In order to maintain a conversion claim, a plaintiff must set forth additional allegations of wrongdoing."  <u>Kubin</u>, <u>supra</u>, 801 F. Supp. at 1118.

Here, Plaintiffs' count asserting conversion against Mr. Loeffel clearly arises out of the purported breach of the Software License Agreement.  Furthermore, Plaintiffs fail to establish that they had an immediate "superior right" to possession of the software and derivative works.  Instead, Plaintiffs merely allege, in conclusory fashion, that Defendants "interfered with Intellectus' rightful use and enjoyment of the Derivative Works." (Compl. ¶ 187).  Significantly, Plaintiffs fail to allege that Loeffel committed any independent tortious act beyond allegedly failing to return the software and derivatives pursuant to the terms of the Software License Agreement and/or Settlement Agreement.  Therefore, Plaintiffs' cause of action is predicated on a mere breach of contract and, as a result, the Complaint does not sufficiently plead a cause of action for conversion.

      **c.**  <u>**Count XIV Tortious Interference with Prospective Economic Advantage**</u>

Plaintiffs' count for tortious interference with prospective economic advantage should be dismissed for failure to state a claim upon which relief may be granted.

Under New York law, to state a claim for tortious interference with prospective economic advantage, the plaintiff must allege that "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." Kirch v. Liberty Media Corp., 449 F.3d 388, 400 (2d Cir. 2006).  "The requirements for establishing liability for interference with prospective contractual relations are more demanding than those for interference with performance of an existing contract." Henneberry v. Sumitomo Corp. of Am., 415 F. Supp. 2d 423, 467 (S.D.N.Y. 2006) (quoting Gertler v. Goodgold, 107 A.D.2d 481, 487 N.Y.S.2d 565 (N.Y. App. Div. 1985) aff'd, 66 N.Y.2d 946, 489 N.E.2d 748 (1985)).   As to the first element, the plaintiff must show that he had a continuing or existing business relationship with a third party." Id. at 469.  In Henneberry, this court dismissed the plaintiff's tortious interference claim because he failed to allege that the defendant had a business relationship "at the time" of the alleged tort.  Id.

 "Plaintiff must establish as to the second element that it 'would have gotten [a] contract but for the defendant's interference.'" Allocco Recycling, Ltd. v. Doherty, 378 F. Supp. 2d 348, 375 (S.D.N.Y. 2005) (quoting Mandelblatt v. Devon Stores, Inc., 132 A.D.2d 162, 521 N.Y.S.2d 672, 677 (1st Dept.1987)).  As to the third element, the plaintiff must allege "wrongful means" - "the conduct must amount to a crime or an independent tort, or must be engaged in "'for the sole purpose of inflicting intentional harm on plaintiffs.'" Henneberry supra, 415 F. Supp.2d at 468.

Here, Plaintiffs Watson and Intellectus allege that after Bravera was purchased by Riptide, "Riptide substantially mismanaged Bravera's operations, which resulted in substantial failures of performance by Bravera under both governmental and private contracts in which Bravera was utilizing the Software as part of the basis for its services."  (Compl. ¶ 83).  In its

count for tortious interference, Plaintiffs only identify Intellectus' "prospective business relationships." (Compl. ¶ 194). Plaintiffs then allege, without specifying who its "existing" customers are, that Mr. Loeffel "tortiously interfered with and damaged Intellectus' existing and prospective business relationships and business opportunities." These conclusory allegations plainly fail to state a cause of action.

As to the first element, Plaintiffs fail allege that they had relationships "at the time" of the alleged negligent mismanagement. Henneberry supra, 415 F. Supp. 2d at 469. The only relationship Watson and Intellectus identify is the Bravera contract, to which Plaintiffs were not a party at the time of the alleged "negligent mismanagement." Even if the Complaint could be read to allege that Plaintiffs had business relationships with third parties that Defendants could have interfered with, Plaintiffs fail to allege that Defendants, "knowing of that relationship, interfered with it." Most significantly however, Plaintiffs patently fail to allege a sufficient level of culpability. As noted above, New York courts require either that the defendant act with the express "purpose" of harming the plaintiff or that the defendant "uses dishonest, unfair, or improper means . . . Kirch supra, 449 F.3d at 400. Here, Plaintiffs merely allege that Defendants were inept in managing Bravera through "negligent[] mismanagement." (Compl. ¶ 196). Defendants' actions, as alleged, clearly cannot form the basis of a claim for tortious interference with prospective economic advantage under New York law and do not rise to the level of "dishonest, unfair, or improper means." Kirch supra, 449 F.3d at 400. Therefore, this Court should dismiss Count XIV of the Complaint.

### d.   <u>Count XV Computer Fraud and Abuse Act</u>

In addition to Plaintiffs' CFAA claim being time-barred for failing to bring this action within two years from the date of discovery, Plaintiffs fail to plead a cognizable cause of action under the CFAA.

"The CFAA, in relevant part, provides a private federal cause of action against a person who intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains ... information from any protected computer." <u>Penrose Computer Marketgroup, Inc. v. Camin</u>, 682 F. Supp. 2d 202, 207 (N.D.N.Y. 2010) (internal quotation marks omitted). The CFAA, "by its plain terms prohibits improper 'access,' not misuse or misappropriation." <u>Univ. Sports Pub. Co. v. Playmakers Media Co.</u>, 725 F. Supp.2d 378, 382 (S.D.N.Y. 2010).  In <u>Univ. Sports Pub.</u>, the plaintiff alleged violation of the CFAA against several defendants for accessing confidential information and then utilizing that information in a competitive venture. <u>Id.</u> at 381-82.  One of those defendants, Gentle, had authorized access to the computer system that contained the information.  <u>Id.</u>  The court granted Gentle's motion for summary judgment because although the plaintiff plead that Gentle used "the database for an improper purpose," the plaintiff failed to show that his access to the computer was "unauthorized."  <u>Id.</u> at 383-84.  The court explained that the CFAA, because it is a criminal statute, "should be interpreted narrowly" and that Congress intended the CFAA "to proscribe hacking, not misappropriation of lawfully accessed information . . . ."

Similarly, in this matter, Plaintiffs fail to plead that Mr. Loeffel improperly "access[ed]" a "protected computer."  Instead, Plaintiffs allege only that the "Software and the Derivative Works" "are a 'protected computer' covered by" the CFAA (Compl. ¶ 202) and the Software and

Derivative Works were "erased or removed" from computer servers.[4]  Importantly, Plaintiffs fail to allege that the access to the software itself was "unauthorized."  (Compl. ¶ 203).

In sum, Plaintiffs improperly attempt to bootstrap their allegation that the deletion of software itself was "unauthorized" to a claim under the CFAA.  As this court has held, "misuse" and "misappropriation" alone cannot form the basis of a claim under the CFAA.  Univ. Sports Pub. supra, 725 F.Supp. 2d at 383.  There are no allegations that Mr. Loeffel gained "unauthorized access" to the servers or that Mr. Loeffel "hack[ed]" the computer servers in question.  Id. at 384.   Thus, Plaintiffs have failed to sufficiently plead a cause of action under the CFAA.

### e.  Counts XVI, XVII XVIII for Fraudulent Conveyance Must be Dismissed

Sections 274 and 275 of the Debtor and Creditor Law,

> provide that a transfer by a debtor is deemed constructively fraudulent if it is made without 'fair consideration,' and one of the following conditions is met:
>
>> (ii) the transferor is engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital, DCL § 274; or (iii) the transferor believes that it will incur debt beyond its ability to pay, DCL § 275.

In re Jacobs, 394 B.R. 646, 659-60 (Bankr. E.D.N.Y. 2008).  "Fair consideration" has two components, "'the exchange of fair value and good faith . . . .'"  Id. (quoting DCL § 272):

---

[4]  Plaintiffs additionally fail to plead that the information was contained on a "protected computer" under the CFAA, instead alleging that the software itself was a "protected computer."  This assertion runs afoul of the CFAA's definition of a "computer", which means:

> an electronic, magnetic, optical, electrochemical, or other high speed data processing **device** performing logical, arithmetic, or storage functions, and includes any data storage **facility** or communications **facility** directly related to or operating in conjunction with such device . . . .

18 U.S.C.A. § 1030(e)(1).  Therefore, software alone is clearly not contemplated within the definition of a "computer" under the CFAA such that the "Software and Derivative Works" themselves could be deemed a "protected computer" under the CFAA.  (Compl. ¶ 202).

> [A] person seeking to set aside a conveyance upon the basis of lack
> of good faith must prove that one or more of the following factors is
> lacking: (1) an honest belief in the propriety of the activities in
> question; (2) no intent to take unconscionable advantage of others;
> and (3) no intent to, or knowledge of the fact that the activities in
> question will hinder, delay, or defraud others...." In short, "the lack
> of good faith imports a failure to deal honestly, fairly and openly."

In re Allou Distributors, Inc., 404 B.R. 710, 717 (Bankr. E.D.N.Y 2009). See also Cilco

Cement Corp. v. White, 55 A.D.2d 668, 669, 390 N.Y.S.2d 178, 179 (N.Y. App. Div. 1976)

(noting that "[t]he compensation paid to a corporate officer must be in proportion to his ability,

services and time devoted, corporate earnings and other relevant facts and circumstances."). In

Cilco, the court held that an economically distressed company's continued payment to its

president while it remained actively in business was not a "fraudulent conveyance" where there

was no evidence that the officer's salary was excessive or unreasonable or that the corporation

"did not receive full value in return." Id.

Plaintiffs' counts, to the extent they allege constructive fraud under sections 274 and 275

of the Debtor and Creditor Law are deficient. Mr. Loeffel's Employment Agreement, which was

publicly filed with the SEC, provided for salary in addition to various performance-based

incentives. Plaintiffs fail to allege that the payments were not received in good faith or that Mr.

Loeffel was not entitled to the various transfers based on the success of Mr. Loeffel's

performance. Rather, Plaintiffs merely allege that these transfers were "'fraudulent' under the

guise of bonuses and increased salaries . . . ." (Complaint ¶ 207). Such conclusory allegations

cannot be allowed to stand. In fact, based on Mr. Loeffel's performance, he is currently entitled

to payment of $2,700,000 which has never been paid to him. (Wilde Decl. ¶22).

Plaintiffs' allegations of actual fraud are similarly deficient. Actual fraud "must be pled

with specificity, as required by Fed.R.Civ.P. 9(b)". In re Sharp Int'l Corp., 403 F.3d 43, 56 (2d

Cir. 2005).  Because direct proof of actual fraud is rare, courts permit the use of "badges of

proof" to show fraud.  "Factors considered as circumstantial proof include:

> (1) a close relationship between the parties to the transaction, (2) a secret and hasty transfer not in the usual course of business, (3) inadequacy of consideration, (4) the transferor's knowledge of the creditor's claim and the transferor's inability to pay it, (5) the use of dummies or fictitious parties, and (6) retention of control of the property by the transferor after the conveyance.'"

Id. at 175.

Plaintiffs' allegations, to the extent they allege actual fraud, are completely barren of any

factual support and should be dismissed under Fed. R. Civ. Pro. 9(b) for failure to plead "with

particularity the circumstances constituting fraud."  Plaintiffs simply make the conclusory

allegation that transfers to Mr. Loeffel "were made . . . with actual intent to hinder, delay or

defraud Watson and Intellectus from recovering from Riptide . . . ."  (Compl. ¶ 220). Plaintiffs'

allegations contain absolutely no indicia of the above-cited "badges" that would tend to provide

circumstantial proof of actual fraud.  To the contrary, all transfers made to Mr. Loeffel were

made pursuant to this Employment Agreement and based upon his performance.  Without

sufficiently pleading the existence of the above-cited "badges" of fraud, Plaintiffs' count for

actual fraud in violation of §276 of the Debtor Creditor Law must be dismissed.

## CONCLUSION

Based upon the foregoing, Defendant Philip Loeffel respectfully requests that this Court

dismiss Plaintiffs' Complaint against Mr. Loeffel, in its entirety.

CARROLL, McNULTY & KULL LLC

By:   /s/ Joseph P. McNulty
      Joseph P. McNulty
      570 Lexington Avenue, 8th Floor
      New York, NY 10022
      (646) 625-4000
      Attorneys for Defendant Philip E. Loeffel