IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CHRISTOPHER WATSON, et al., | * | |
| Plaintiffs | * | CASE NO.: 11 CIV 0874 |
| v. | * | **PLAINTIFFS' OPPOSITION TO DEFENDANT LOEFFEL'S MOTION TO DISMISS** |
| RIPTIDE WORLDWIDE, INC. (f/k/a SHEA DEVELOPMENT CORP.), et al., | * | |
| | * | |
| Defendants | * | |
| *          *          * | * | *          *          * |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT PHILLIP LOEFFEL'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

ALLYN & FORTUNA
Nicholas Fortuna (NF-9191)
Megan J. Muoio (JM-6121)
200 Madison Avenue, Fifth Floor
New York, New York 10016
(212) 213-8844

OBER, KALER, GRIMES & SHRIVER
A Professional Corporation
James E. Edwards, Jr. (admitted *pro hac vice*)
Anthony F. Vittoria (admitted *pro hac vice*)
Kelly M. Preteroti (admitted *pro hac vice*)
100 Light Street
Baltimore, Maryland 21202
(410) 685-1120

*Counsel for Plaintiffs
Christopher Watson and Intellectus, LLC*

# TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................ 1

II.  RELEVANT FACTS ...................................................................................... 2

III.  PROCEDURAL ISSUE ................................................................................. 5

    A.  The Court Should Reject The Declarations And Documentation Submitted By Loeffel And Rule On His Motion Pursuant To Federal Rule Of Civil Procedure 12(b)(6) ...................................................................................................... 5

    B.  To The Extent That The Court Decides To Consider The Extrinsic Material Submitted By Loeffel, It Must Convert The Motion To One For Summary Judgment, And Should Deny The Motion Or, Pursuant To Rule 56(d), Provide The Plaintiffs With The Opportunity To Conduct Discovery .................................. 6

IV.  LEGAL ARGUMENT .................................................................................... 9

    A.  The Statute Of Limitations Does Not Bar Any Of The Plaintiffs' Claims ............. 9

    B.  Personal Liability On The Part Of Loeffel Has Been Properly Pled By The Plaintiffs ................................................................................................ 11

    C.  Collateral Estoppel Does Not Apply In This Case ................................................. 13

    D.  The Plaintiffs Have Properly Pled Each Individual Cause of Action Against Loeffel ................................................................................................... 16

        1.  Trespass to Chattels (Count XII) and Conversion ...................................... 16

        2.  Tortious Interference With Prospective Economic Advantage (Count XIV) ............................................................................................ 17

        3.  Computer Fraud and Abuse Act (Count XV) ............................................. 20

        4.  Fraudulent Conveyance (Counts XVI, XVII and XVIII) ............................ 22

            a.  The facts submitted by Loeffel show that he was paid discretionary sums over and above his salary while Riptide had millions of dollars in outstanding debt ............................................................ 22

            b.  The Plaintiffs have stated valid causes of action for fraudulent conveyance ................................................................................... 23

IV.  CONCLUSION ............................................................................................... 25

## TABLE OF AUTHORITIES

### FEDERAL CASES

Page(s)

Abbas v. Dixon,
480 F.3d 636 (2d Cir. 2007) .................................................................................................. 10

Alliance Int'l, Inc. v. Todd,
2008 WL 2859095 (E.D.N.C. July 22, 2008) .......................................................................... 21

Arizona v. California,
530 U.S. 392, 414 (2000) ...................................................................................................... 14

Ashcroft v. Iqbal,
129 S. Ct. 1937 (2009) ............................................................................................................ 5

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007) ........................................................................................................... 5, 21

CA, Inc. v. Rocket Software, Inc.,
579 F. Supp. 2d 355 (E.D.N.Y. 2008) .................................................................................. 17

Camofi Master LDC and Camhzn Master LDC v. Riptide Worldwide, Inc., et al.,
No. 10 Civ. 4020 (CM) (S.D.N.Y.) ..................................................................................... 5, 8

Cavendish Traders, Ltd. v. Nice Skate Shoes, Ltd.,
117 F. Supp. 2d 394 (S.D.N.Y. 2000) .................................................................................. 7, 9

Chartier v. Marlin Mgmt., LLC,
202 F.3d 89 (2d Cir. 2000) .................................................................................................... 15

Celotex Corp. v. Catrett,
477 U.D. 317 (1986) ............................................................................................................... 7

Commer v. Giuliani,
34 Fed. Appx. 802, 2002 WL 826462 (2d Cir. 2002) .............................................................. 7

Dedalus Found. v. Banach,
2009 WL 3398595 (S.D.N.Y. Oct. 16, 2009) ........................................................................ 21

De La Fuente v. DCI Telecomms., Inc.,
206 F.R.D. 369 (S.D.N.Y. 2002) ............................................................................................ 9

DiFolco v. MSNBC Cable L.L.C.,
622 F.3d 104 (2d Cir. 2010) ................................................................................................... 6

Drenis v. Haligiannis,
452 F. Supp. 2d 418 (S.D.N.Y. 2006) ................................................................................... 23

Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.,
   111 F.3d 284 (2d Cir. 1997) ................................................................................................... 13

Garcha v. City of Beacon,
   351 F. Supp. 2d 213 (S.D.N.Y. 2005) ................................................................................... 6, 7

Gemological Inst. Of America, Inc. v. Zarian Co.,
   349 F. Supp. 2d 692 (S.D.N.Y. 2004) ....................................................................................... 8

Giant Group, Ltd. v. Sands,
   142 F. Supp. 2d 503 (S.D.N.Y. 2001) ....................................................................................... 6

Hayden v. City of Nassau,
   180 F.3d 42 (2d Cir. 1999) ......................................................................................................... 6

Hellstrom v. U.S. Dept. of Veterans Affairs,
   201 F.3d 94 (2d Cir. 2000) ..................................................................................................... 7, 9

Henneberry v. Sumitomoto Corp. of Am.,
   415 F. Supp. 2d 423 (S.D.N.Y. 2006) ................................................................................. 17, 18

In re Bennett Funding Group, Inc.,
   220 B.R. 743 (Bankr. N.D.N.Y. 1997) ..................................................................................... 24

In re Flutie New York Corp.,
   310 B.R. 31 (Bankr. S.D.N.Y. 2004) ....................................................................................... 24

In re Sharp Int'l Corp.,
   403 F.3d 43 (2nd Cir. 2005) ..................................................................................................... 24

Ivy Mar Co., Inc. v. C.R. Seasons, Ltd.,
   1998 WL 704112 (E.D.N.Y. October 7, 1998) .................................................................. 17, 19

Jami Mktg. Servs., Inc. v. Howard,
   1988 WL 46106 (E.D.N.Y. April 26, 1988) ....................................................................... 12, 16

Jeffreys v. City of New York,
   426 F.3d 549 (2d Cir. 2005) ....................................................................................................... 7

Johnson & Johnson v. Am. Nat'l Red Cross,
   528 F. Supp 2d 462 (S.D.N.Y. 2008) ....................................................................................... 20

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
   475 U.S. 574 (1986) ................................................................................................................... 7

Music Sales Corp. v. Morris,
   73 F. Supp. 2d 364 (S.D.N.Y. 1999) ....................................................................................... 13

Nat'l Life Ins. Co. v. Solomon,
   529 F.2d 59 (2d Cir. 1975)............................................................................................7, 9

NLRB v. Thalbo Corp.,
   171 F.3d 102 (2d Cir. 1999).............................................................................................15

Patrick Paterson Custom Homes, Inc. v. Bach,
   586 F. Supp. 2d 1026 (N.D. Ill. 2008)............................................................................21

Ruiz v. Herrera,
   745 F. Supp. 940 (S.D.N.Y. 1990)...................................................................................9

Scantek Med. Inc. v. Sabella,
   583 F. Supp. 2d 477 (S.D.N.Y. 2008)......................................................................13, 14

Schoenbaum v. Firstbrook,
   405 F.2d 215 (2d Cir. 1968)..............................................................................................9

SEC v. Credit Bancorp, Ltd,
   232 F. Supp. 2d 260 (S.D.N.Y. 2002).............................................................................13

SEC v. Francis Wilde, et al.,
   Case No. SACV 11-315 DOC (C.D. Cal.).........................................................................8

Torrico v. Int'l Bus. Machines Corp.,
   319 F. Supp. 2d 390 (S.D.N.Y. 2004)...........................................................................6, 8

University Sports Pub. Co. v. Playmakers Media Co.,
   725 F. Supp. 2d 378 (S.D.N.Y. 2010).............................................................................21

Volvo N. Am. Corp. v. Men's Int'l Professional Tennis Council, et al.,
   857 F.2d 55 (2d Cir. 1988)..............................................................................................18

Wajilam Exports (Singapore) PTE., Ltd. v. ATL Shipping Ltd.,
   475 F. Supp. 2d 275 (S.D.N.Y. 2006)...............................................................................6

Waldron v. British Petro. Co.,
   231 F. Supp. 72 (S.D.N.Y. 1964)......................................................................................9

## STATE CASES

                                                                      **Page(s)**
Carvel Corp. v. Noonan,
   3 N.Y.3d 182 (N.Y. 2004)...............................................................................................18

DiNardo v. L&W Indus. Park of Buffalo, Inc.,
   74 A.D.2d 736 (4th Dept. 1980).......................................................................................13

Fleck v. Perla,
  40 A.D.2d 1069 (4th Dept. 1972).............................................................................11

Greenway Plaza Office Park-1, LLC v. Metro Construction Servs., Inc.,
  4 A.D.3d 328 (2d Dept. 2004)...............................................................................11

Joan Hansen & Co., Inc. v. Everlast World's Boxing Headquarters Corp.,
  296 A.D.2d 103 (1st Dept. 2002) ..........................................................................12

Key Bank of New York v. Grossi,
  227 A.D.2d 841 (3d Dept. 1996)......................................................................12, 16

Meese v. Miller,
  79 A.D.2d 237 (4th Dept. 1981)......................................................................12, 16

New York Univ. v. Cont'l Ins. Co.,
  87 N.Y.2d 308 (1995)............................................................................................10

Petkanas v. Kooyman,
  303 A.D.2d 303 (1st Dept. 2003) .........................................................................13

Rajeev Sindhwani, M.D., PLLC v. Coe Bus. Serv., Inc.,
  52 A.D.3d 674 (2d Dept. 2008)........................................................................12, 16

School of Visual Arts v. Kuprewicz,
  771 N.Y.S.2d 804 (N.Y. Sup. Ct. 2003).................................................................16

South Carolina Steel Corp. v. Miller,
  194 A.D.2d 782 (2d Dept. 1993)...........................................................................11

Van Wormer v. McCasland Truck Ctr.,
  163 A.D.2d 632 (3d Dept. 1990)...........................................................................11

## STATUTES

**Page(s)**

18 U.S.C. §1030(a)(5)(A)............................................................................20, 21, 22

New York Debtor and Creditor Law § 274 .................................................................23

New York Debtor and Creditor Law § 275 .................................................................23

New York Debtor and Creditor Law § 276 .................................................................24

## RULES

Page(s)

Fed. R. Civ. P. 8 ........................................................................................................................ 13

Fed. R. Civ. P. 9(b)................................................................................................................... 24

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 2, 5, 6

Fed. R. Civ. P. 12(d) .................................................................................................................. 6

Fed. R. Civ. P. 56(a) .................................................................................................................. 6

Fed. R. Civ. P. 56(d)............................................................................................................... 6, 8

Local Rule of the Southern District of New York 7.1(a) ............................................................. 1

Local Rule of the Southern District of New York 11.1 ............................................................... 1

Individual Practice Rule 3(D)...................................................................................................... 1

Plaintiffs, Christopher Watson and Intellectus, LLC, by and through their undersigned counsel, and pursuant to Rules 7.1(a) and 11.1 of the Local Rules of the Southern District of New York and Rule 3(D) of the Individual Practices of Judge Paul A. Crotty, hereby submit this Opposition to Defendant Phillip Loeffel's Motion to Dismiss.

## I.    INTRODUCTION

In the wake of a series of corporate acquisitions spearheaded by serial defrauder Francis Wilde, two companies were gutted for millions of dollars and left as empty shells. One of those companies was Bravera, Inc., a company formerly owned and operated by Plaintiff Christopher Watson. During the same series of transactions, Watson and several investors – including two investors who have filed their own suit in this Court (Case No. 10 Civ. 4020) – lost tens of millions of dollars. A third company that was acquired at the same time, however, somehow miraculously survived relatively unscathed, while its owner pocketed a large sum of money from the merger. That third company was Riptide Software, Inc., and was (and is again) significantly owned and controlled by Defendant Phillip Loeffel.

Defendant Loeffel nonetheless would like this Court to believe that he was "only following orders" and, as a matter of law, cannot be held personally liable for the financial carnage that was wrought by Wilde and the other Defendants in this case. To that end, Loeffel has submitted a motion seeking the dismissal of the various claims asserted against him in the Complaint. In a motion, which is deceptively titled a "Motion to Dismiss", Loeffel has improperly asked this Court to resolve several important factual issues – all before discovery has even begun in this case. And, indicative of their close and symbiotic relationship during the events in question, Loeffel has enlisted Wilde, the mastermind behind the scheme that is the crux of this case, to assist him in his efforts.

The Plaintiffs have adequately pled each of the causes of action asserted in the Complaint. Further, the facts submitted by Loeffel are disputed and no discovery has been undertaken with regard to such disputed facts. Accordingly, Loeffel's Motion should be denied.

## II.    RELEVANT FACTS[1]

In the Spring and Summer of 2007, Defendants Francis Wilde and Riptide Worldwide, Inc. ("Riptide") engaged in a calculated series of corporate acquisitions. On July 16, 2007, Riptide acquired Bravera, Inc. ("Bravera"), a company wholly owned and controlled by Plaintiff Christopher Watson. (See Complaint, at ¶ 56.) On that very same day, Riptide also acquired Riptide Software, Inc. ("Riptide Software"), a company controlled by Loeffel. (Id. at ¶ 8; see also Declaration of Phillip Loeffel, a copy of which is attached to Defendant Phillip Loeffel's Motion to Dismiss, at ¶ 3.) Just a couple of months earlier, in March of 2007, Riptide acquired a company called Information Intellect, Inc. (See Declaration of Christopher Watson, a copy of which is attached hereto, at ¶ 1.)

Following the acquisition of Riptide Software in July of 2007 (incorrectly stated as "July, 2009" in the Complaint), Loeffel was installed as the President of Riptide. (See Complaint, at ¶ 8.) Upon information and belief, Loeffel received a substantial payment for the sale of his company to Riptide. (See Watson Decl., at ¶ 2.) However, Riptide Software, like Bravera, was saddled with a great deal of debt as direct result of the merger. (Id. at ¶ 3.)

---

[1] As discussed below, it is unclear whether the Court will treat Loeffel's Motion as a motion to dismiss or as a motion for summary judgment. Accordingly, it was necessary for the Plaintiffs to supplement the allegations made in the Complaint with an Declaration from Watson and with other documentation so as to counter the factual assertions made by Loeffel in his Motion. To the extent that the Court intends to treat Loeffel's Motion as one for dismissal under Rule 12(b)(6), the Court should focus only on the allegations made in the Complaint, which are highlighted here by a reference to a specific paragraph in the Complaint.

Pursuant to the Software License and Asset Purchase Agreement (the "Software License") between Plaintiff Intellectus and Riptide/Bravera, Bravera continued to have the ability to market and sublicense certain valuable software and software applications (the "Software") that had been developed by Watson and Intellectus. (See Complaint, at ¶¶ 70-74.) During the next several months, Riptide, Wilde and Loeffel engaged in a series of activities designed to siphon value out of Bravera and the Software as quickly as possible, without regard to the consequences to Watson and Intellectus, who still owned the Software. (See Complaint at ¶¶ 193-200.) For example, Loeffel, along with Riptide and Wilde, invoiced for a series of large payments under a contract with the Commander, Navy Installations Command ("CNIC") and negligently or intentionally misrepresented their ability and intention to perform the services that were required under that contract. (Id. at ¶ 197.) Watson and Intellectus had dealt with CNIC for years, and had hoped to work with them again in the future. (Id.) However, the actions by Loeffel, Wilde and Riptide made that prospect impossible. (Id.)

In addition to the CNIC contract, Loeffel, Wilde and Riptide contracted with several other companies with whom Watson and Intellectus had established a relationship. (See Watson Decl., at ¶ 4.) Despite negotiating or executing those contracts and often taking full or partial payment, Loeffel, Wilde and Riptide negligently or intentionally misrepresented their ability or intention to provide the Software or services required under those contracts. (See Watson Decl., at ¶ .) Those companies included Metavante, Mid-Missouri Bank, and Aliant Bank. (Id. at ¶ 4.) Upon information and belief, Loeffel personally benefited from these improper activities because the income received served to increase Riptide's short-term income so as to increase Loeffel's bonus. (Id. at 8.) Upon information and belief, payments by some of Bravera's clients also

enabled Loeffel to pay off debt that Riptide Software had incurred during and following the merger. (Id. at ¶ 9.)

Due to the material breaches by Riptide, Watson and Intellectus proceeded to, among other things, terminate the Software License and file a lawsuit against Riptide. (See Complaint, at ¶ 90; see also, Exhibit A to Wilde Declaration a copy of which is attached to Defendant Phillip Loeffel's Motion to Dismiss.)  In terminating the Software License, Intellectus demanded the return of the Software and the Derivative Works that it was due under the Software License. (See Ex. 1, Wilde Decl., at 18; see also Exhibit A to Wilde Declaration.)  Following that demand, Loeffel returned "to Watson a number of servers that had been in Bravera's possession in which the Software had been loaded." (See Complaint, at ¶ 88.)  However, Watson soon realized that the Software and Derivative Works had been erased from the servers by Loeffel. (Id.; see also Exhibit D to Loeffel Declaration.)

Following months of litigation, the parties entered into a supplemental agreement (the "Supplemental Agreement"), whereby Riptide was to pay Watson $175,000, place $275,000 in an escrow account, and return the Software and Derivative Works. (See Complaint, at ¶ 95; see also Exhibit B to Wilde Declaration.)  It soon became apparent, however, that Riptide and the other defendants never had the ability or intention of complying with the material parts of the Supplemental Agreement.  Specifically, Riptide never made the payments required under the Supplemental Agreement.[2]  (See Complaint, at ¶ 98.)  Indeed, after delaying for over a month, co-Defendant Joseph Vitetta ("Vitetta"), Loeffel's subordinate, sent Watson an e-mail in which he threatened to hold the Software and Derivative Works hostage unless Watson agreed to

---

[2] Watson has since learned that, pursuant to contracts with its investors, Riptide could not make a sizable payment without pre-approval. (See Watson Decl., at ¶ 21.)  Upon information and belief, Riptide did not have that approval when it agreed to the payment called for in the Supplemental Agreement. (Id.)

reduce the amount of the payment that was to be made to him – an amount that the parties had previously agreed to in open court. (See Watson Decl., at ¶ 19.) When, months later, Loeffel finally sent discs that purported to contain the Software and the Derivative Works, Watson discovered that the material on the discs was incomplete and unusable. (Id. at 20.)

## III.   PROCEDURAL ISSUE

**A.    The Court Should Reject The Declarations And Documentation Submitted By Loeffel And Rule On His Motion Pursuant To Federal Rule Of Civil Procedure 12(b)(6).**

"In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." Camofi Master LDC and Camhzn Master LDC v. Riptide Worldwide, Inc., et al., No. 10 Civ. 4020 (CM) at p. 8 (S.D.N.Y. March 23, 2011) (McMahon, J.) (citing Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 44 (2d Cir. 2003) and Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007)). Nevertheless, to overcome a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1944 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

In ruling on a motion to dismiss, a court should look only to the complaint and any documents attached to or referenced in the complaint. See, e.g., DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). Despite this well settled law, Loeffel submitted three Declarations and over 260 pages of extrinsic documentation with his "Motion to Dismiss", and he repeatedly requests the Court to refer to, and rely upon, those declarations and documents. Although it is in a district court's discretion to consider extrinsic materials submitted along with a Rule 12(b)(6) motion to dismiss, Garcha v. City of Beacon, 351 F. Supp. 2d 213, 216 (S.D.N.Y. 2005), this Court has regularly declined to do so, especially when discovery has not yet commenced. Giant Group, Ltd. v. Sands, 142 F. Supp. 2d 503, 506 (S.D.N.Y. 2001); see also Wajilam Exports (Singapore) PTE., Ltd. v. ATL Shipping Ltd., 475 F. Supp. 2d 275, 277-278 (S.D.N.Y. 2006). As discovery in this complicated case has not yet commenced, the Court should likewise refuse to consider the declarations and the plethora of extrinsic materials submitted by Loeffel and should rule on this motion pursuant to Rule 12(b)(6). As discussed more below, Loeffel has failed to show that any of the Plaintiffs' claims are deficient under Rule 12(b)(6).

**B.    To The Extent That The Court Decides To Consider The Extrinsic Material Submitted By Loeffel, It Must Convert The Motion To One For Summary Judgment, And Should Deny The Motion Or, Pursuant To Rule 56(d), Provide The Plaintiffs With The Opportunity To Conduct Discovery.**

To the extent that the Court decides to consider any of the extrinsic materials submitted by Loeffel, it must convert Loeffel's "Motion to Dismiss" to a motion for summary judgment. Fed. R. Civ. P. 12(d); see also Hayden v. City of Nassau, 180 F.3d 42, 54 (2d Cir. 1999).

Pursuant to Fed. R. Civ. P. 56(a), a court may grant summary judgment only if the movant shows both "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Torrico v. Int'l Bus. Machines Corp., 319 F. Supp.

2d 390, 397 (S.D.N.Y. 2004). In ruling on a motion for summary judgment, the "court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor." Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005). Generally, to defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), but "must point to 'specific facts showing that there is a genuine issue for trial,' by proffering 'significant probative evidence tending to support [its] complaint.'" Garcha, 351 F. Supp. 2d at 217 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-249 (1986)).

An exception to this general rule is when the motion for summary judgment is filed prior to the commencement of discovery. Indeed, the Supreme Court has held that summary judgment should only be granted "after adequate time for discovery . . . " Celotex Corp. v. Catrett, 477 U.D. 317, 322 (1986). The Second Circuit and this Court have repeatedly reiterated the Supreme Court's position. Specifically, the Second Circuit has held that "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." Hellstrom v. U.S. Dept. of Veterans Affairs, 201 F.3d 94, 97 (2d Cir. 2000); see also Commer v. Giuliani, 34 Fed. Appx. 802, 806, 2002 WL 826462 (2d Cir. 2002) (citing "the general principle that summary judgment should not be awarded prior to discovery") and Nat'l Life Ins. Co. v. Solomon, 529 F.2d 59, 61 (2d Cir. 1975) (summary judgment is a "drastic device" and should not be granted where "one party has yet to exercise its opportunities for pretrial discovery"). Likewise, this Court has repeatedly stated that pre-discovery motions for summary judgment are "inappropriate," Cavendish Traders, Ltd. v. Nice Skate Shoes, Ltd.,

117 F. Supp. 2d 394, 402-403 (S.D.N.Y. 2000), and should be viewed "with significant caution." Gemological Inst. Of America, Inc. v. Zarian Co., 349 F. Supp. 2d 692, 695 (S.D.N.Y. 2004).

If treated as a motion for summary judgment, Loeffel's motion should be denied for several reasons. First, the extrinsic materials submitted by Loeffel highlight the existence of several disputes of material fact, including, but not limited to, (1) Loeffel's claim that his compensation from Riptide was fair and in "good faith," while the Plaintiffs claim that most of it was fraudulent in the face of the millions of dollars owed by Riptide; (2) the potential fraudulent conveyances that enabled Riptide Software to survive while every other company met its demise; and (3) Loeffel's claim that was only "following orders" in regard to the software at issue while Intellectus claims that he destroyed the software knowingly or recklessly.

Second, these are issues regarding the credibility of the proof submitted by Loeffel. Specifically, in addition to questions of credibility raised by his own Declaration, Loeffel has submitted the Declaration of co-Defendant Wilde, who has not only been sued in this case for fraudulent activities, but has also been sued for fraud in a related case pending before this Court, Camofi Master LDC and Camhzn Master LDC v. Riptide Worldwide, Inc., et al., No. 10 Civ. 4020 (CM) (S.D.N.Y.), and by the Securities and Exchange Commission for running a Ponzi scheme. SEC v. Francis Wilde, et al., Case No. SACV 11-315 DOC (AJWx ) (C.D. Cal.). It is well settled that the court should not judge credibility on a motion for summary judgment. See Torrico, 319 F. Supp. 2d at 409 (quoting Neidich v. Estate of Neidich, 222 F. Supp. 2d 357, 368 (S.D.N.Y. 2002)). Accordingly, summary judgment is not suitable for this case at this time.

Third, the motion should be denied to allow the Plaintiffs the opportunity to conduct discovery in this matter. Federal Rule of Civil Procedure 56(d) expressly provides the following:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its

> opposition, the court may (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

This Court has regularly denied premature motions for summary judgment so as to enable the nonmoving party an opportunity conduct discovery. See, e.g., De La Fuente v. DCI Telecomms., Inc., 206 F.R.D. 369 (S.D.N.Y. 2002); Cavendish, supra; Nat'l Life Ins. Co., supra; see also, Hellstrom, supra (summary judgment vacated to allow nonmovant a chance to conduct discovery). Permitting the non-moving party to engage in discovery is particularly important where, as here, the material facts are in the exclusive possession of the moving party. See, e.g., Schoenbaum v. Firstbrook, 405 F.2d 215 (2d Cir. 1968); Ruiz v. Herrera, 745 F. Supp. 940 (S.D.N.Y. 1990); Waldron v. British Petro. Co., 231 F. Supp. 72 (S.D.N.Y. 1964).

As indicated above, there are several factual issues that are raised in the extrinsic materials submitted by Loeffel. The Plaintiffs have not been able to conduct any discovery on these issues for the simple reason that discovery in this case has not yet commenced. The Plaintiffs should have an opportunity to investigate these issues. Accordingly, Loeffel's Motion should be denied and discovery should be allowed to commence in this matter.

## IV.    LEGAL ARGUMENT

## A.    The Statute Of Limitations Does Not Bar Any Of The Plaintiffs' Claims.

Ignoring the fact that his destruction of the Software occurred after the termination of the Software License, Loeffel asserts that the Plaintiffs' claims for Trespass to Chattels (Count XII), Conversion (Count XIII), and violation of the Computer Fraud and Abuse Act (Count XV), are barred by the statute of limitations contained in the Software License. Loefel's argument is

misplaced because the claims related to his destruction of the Software and Derivative Works were not only temporally separated from the Software License, but relate to distinct legal duties.

It is well established that "a tort obligation is a duty imposed by law to avoid causing injury to others" and is "'apart from and independent of promises made'" in a contract. New York Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 316 (1995) (quoting Prosser and Keeton, Torts § 92, at 655 [5th ed])). Here, Loeffel's duty to refrain from destroying the Plaintiffs' property was separate and apart from Riptide's duty to make payments and issue warrants under the Software License. Accordingly, although Loeffel's *access* to the Software and the Derivative Works arose out of the Software License, Loeffel's *destruction* of the Software and Derivative Works was unrelated to the Software License. As result, the statute of limitations does not apply to the Plaintiffs' tort claims against Loeffel.

Furthermore, assuming *arguendo* that the limitations period set forth in the Software License Agreement applies, which the Plaintiffs dispute, the applicable limitations period was tolled by virtue of the Defendants' fraud. Under New York law, the doctrine of equitable tolling "may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007) (citing, inter alia Doe v. Holy See (State of Vatican City), 17 A.D. 3d. 793, 794 (3d Dept. 2005)).

In the instant case, the statute of limitations was tolled by the fraud committed by the Defendants to induce the Plaintiffs into entering into the Supplemental Agreement. Specifically, the Plaintiffs have alleged, and the facts show, that the Defendants knew at the time that they entered into the Supplemental Agreement that they had no ability or intention to satisfy the material obligations under that Agreement, including the requirement that they return the

10

Software and all of the Derivative Works. (See Complaint, at ¶ 94; see also Watson Decl., at ¶¶ 19-21.) In other words, the Plaintiffs entered into the Supplemental Agreement, and withheld further litigating the matter, based on the Defendants' fraud, misrepresentations, and deception. Accordingly, even if the statute of limitations set forth in the Software License applies, the limitations period was tolled by the Defendants' fraud and the Plaintiffs' claims are timely.

## B.   Personal Liability On The Part Of Loeffel Has Been Properly Pled By The Plaintiffs.

By invoking the "just following orders" defense, Loeffel next argues that he cannot be held individually liable for Counts XII-XVIII because he was acting on behalf of Riptide and on the orders of his superiors.[3] (See Loeffel's Memorandum, at pp. 10-11.) In making this argument, Loeffel misstates the applicable standard for pleading a *prima facie* case of individual tort liability against an officer of a corporation and mischaracterizes the allegations in the Complaint.

It is well established that "[a] director or officer of a corporation does not incur personal liability for its torts merely by reason of his official character . . . . However, if a director or officer of a corporation commits, or participates in the commission of a tort, whether or not it is also by or for the corporation, he is liable to third persons injured thereby." Greenway Plaza Office Park-1, LLC v. Metro Construction Servs., Inc., 4 A.D.3d 328, 329 (2d Dept. 2004) (quoting 14A NY Jur 2d, Business Relationships § 763 at 434); see also South Carolina Steel Corp. v. Miller, 194 A.D.2d 782 (2d Dept. 1993); Van Wormer v. McCasland Truck Ctr., 163 A.D.2d 632 (3d Dept. 1990); Fleck v. Perla, 40 A.D.2d 1069, 1070 (4th Dept. 1972). Loeffel admits as much, acknowledging in his Motion that "a corporate officer who commits or

---

[3] Loeffel's story is belied by the fact that he was allegedly instructed to delete the Software and Derivative Works by co-Defendant Joseph Vitetta, *his subordinate*. (See Exhibit D to Loeffel Decl.; see also Watson Decl., at ¶ 19.)

11

participates in a tort, even if it is in the course of his duties on behalf of the corporation, may be held individually liable." <u>Jami Mktg. Servs., Inc. v. Howard</u>, 1988 WL 46106 *3 (E.D.N.Y. April 26, 1988).

Under New York law, the "failure to surrender the wrongfully retained chattel either with knowledge of the conversion or upon demand from the rightful owner will give rise to liability." <u>Rajeev Sindhwani, M.D., PLLC v. Coe Bus. Serv., Inc.</u>, 52 A.D.3d 674, 677 (2d Dept. 2008) (citation omitted). Under this framework, the courts in New York have repeatedly held that a plaintiff can assert a tort, such as the tort of conversion, against an officer or employee of a company in conjunction with or separate to a breach of contract action against that company. <u>See, e.g.</u>, <u>Meese v. Miller</u>, 79 A.D.2d 237, 238 (4th Dept. 1981) (plaintiff properly plead claim for conversion against corporate officer over objection by defendant that claim was really a breach of contract action); <u>Key Bank of New York v. Grossi</u>, 227 A.D.2d 841, 843 (3d Dept. 1996) (holding that claim for conversion was properly pled separate and apart from breach of contract claim where defendant "exercise[d] dominion and control over property in violation of plaintiff's rights."). Here, the Plaintiffs allege that Loeffel actively participated in the deletion of the Software and Derivative Works from the servers belonging to Intellectus (a contention that is supported by Exhibit D to Loeffel's Declaration), did so intentionally and without justification, and failed to return the intellectual property upon request. (<u>See</u> <u>e.g.</u> Complaint, at ¶¶ 182, 184.) Thus, Loeffel is liable for his tortious conduct, separate and apart from the company's liability.

In an attempt to buttress his misplaced argument, Loeffel wrongfully asserts that an enhanced pleading standard applies to this case. However, the cases cited by the Defendant in his Motion involve claims of tortious interference with, or inducing the breach of, a contract - neither of which are claims the Plaintiffs have asserted against Loeffel. <u>See</u> <u>Joan Hansen & Co.,</u>

Inc. v. Everlast World's Boxing Headquarters Corp., 296 A.D.2d 103, 110 (1st Dept. 2002) (involving claim of tortious interference with contractual relations against officer); see also Petkanas v. Kooyman, 303 A.D.2d 303 (1st Dept. 2003) (involving claim of tortious interference with a contract against officer); DiNardo v. L&W Indus. Park of Buffalo, Inc., 74 A.D.2d 736 (4th Dept. 1980) (involving claim that officer induced breach by corporation of contract).

Here, the Plaintiffs' do not allege that Loeffel personally breached the agreements involved in this case, including the Software License Agreement, or that he induced the breach of these agreements. Accordingly, the torts asserted against Loeffel are governed by the pleading standard set forth in Fed. R. Civ. P. 8 requiring a "short plain statement of the claim showing that the pleader is entitled to relief" and the general rule that "corporate directors and officers who commit or participate in the commission of a tort, even if it be for the corporation's benefit, can indeed be held personally liable for any ensuing injuries." Scantek Med. Inc. v. Sabella, 583 F. Supp. 2d 477, 497 (S.D.N.Y. 2008). For these reasons, Loeffel's assertion that the Plaintiffs have failed to properly plead individual liability against Loeffel is without merit.

## C.    Collateral Estoppel Does Not Apply In This Case.[4]

Despite submitting over 260 pages of extrinsic evidence, Loeffel never asserts in his Motion that he, or anyone affiliated with Riptide, actually returned to Intellectus all of the

---

[4] In his Motion, Loeffel mentions, in passing, the doctrine of *res judicata*. (See Loeffel's Memorandum, at 12-13.) It does not appear, however, that Loeffel is advancing an argument that *res judicata* applies in this case, as the remaining portion of that section of his Memorandum relates to the related principle of collateral estoppel. Nevertheless, and to the extent that Loeffel intends to argue *res judicata* in this case, it is clear that the doctrine does not apply because the claims made against Loeffel are not the same, Music Sales Corp. v. Morris, 73 F. Supp. 2d 364 (S.D.N.Y. 1999), and because the Supplemental Agreement is subject to rescission because it was procured by fraud and was materially breached. SEC v. Credit Bancorp, Ltd, 232 F. Supp. 2d 260 (S.D.N.Y. 2002) (court approved settlement agreement can be set aside if induced by fraud); Frank Felix Assocs., Ltd. v. Austin Drugs, Inc., 111 F.3d 284 (2d Cir. 1997) (settlement agreement can be rescinded for material breach).

Software and Derivative Works to which it was entitled under the Supplemental Agreement. Rather, Loeffel argues that Intellectus is collaterally estopped from raising the issue in this litigation because it abandoned the apparently fruitless effort to obtain that Software in other, related, litigation. Upon no lesser authority than the Supreme Court of the United States, Loeffel's assertion is incorrect and his argument should be rejected.

In the case of <u>Arizona v. California</u>, the Supreme Court directly addressed whether a settlement agreement and consent judgment precluded the litigation of issues in subsequent litigation. In that case, the Court noted that "'[i]n most circumstances, it is recognized that consent agreements ordinarily are intended to preclude any further litigation on the claim presented but are not intended to preclude further litigation on any of the issues presented. Thus consent judgments ordinarily support claim preclusion but not issue preclusion." 530 U.S. 392, 414 (2000) (quoting 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4443, pp. 384-385 (1981)). The Supreme Court went on to explain the basis for this principle: "This differentiation is grounded in basic *res judicata* doctrine. It is the general rule that issue preclusion attaches only '[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment.'" <u>Id.</u> (quoting Restatement (Second) of Judgments § 27, p. 250 (1982)). "'In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore, the rule of this Section [describing issue preclusion's domain] does not apply with respect to any issue in a subsequent action.'" <u>Id.</u> (quoting Restatement (Second) of Judgments § 27, comment e, at 257)).

Noting that collateral estoppel is to be narrowly applied because it "poses the danger of placing termination of the litigation ahead of the correct result," the Second Circuit has stressed

the requirement that the issue must be "actually litigated" before collateral estoppel can apply. Chartier v. Marlin Mgmt., LLC, 202 F.3d 89, 94 (2d Cir. 2000). Specifically, the Second Circuit has held that collateral estoppel does not apply "if the issue was not actually decided in the prior proceeding or if its decision was not necessary to the judgment." NLRB v. Thalbo Corp., 171 F.3d 102, 109 (2d Cir. 1999). Indeed, even if the issue was litigated, the court in the subsequent litigation is to make a determination as to whether there was a "full and fair hearing" on the issue in the previous litigation.     Chartier, 202 F.3d at 94.     This determination requires the consideration of the following factors: "1) the nature of the forum and the importance of the claim in the prior litigation; 2) the incentive to litigate and the actual extent of the litigation in the prior forum; and 3) the foreseeability of future litigation (because of its impact on the incentive to litigate in the first proceeding." Id. (quoting In re Sokol, 113 F.3d 303, 307 (2d Cir. 1997)).

Here, the issue of whether the Defendants had actually returned all of the Software and Derivative Works to which Intellectus was entitled was never "actually litigated." For that reason, alone, Loeffel's claim of collateral estoppel must be rejected. Even if, however, the series of conferences held by Magistrate Judge Gorenstein for the purpose of reaching a settlement of a dispute – not to find and determine facts – could be considered "actual litigation", Loeffel's claim of collateral estoppel still fails because (1) there was no "full and fair" hearing on the issue as the Court simply "assumed" facts to be true and (2) Intellectus had no incentive to continue to press the claim because it was clear that the Defendants had no ability and no intention of ever fully complying with their obligations. Accordingly, collateral estoppel does not apply to the issue of Loeffel's improper destruction of the Software and Derivative Works.

15

**D.**   **The Plaintiffs Have Properly Pled Each Individual Cause of Action Against Loeffel.**

**1.**   **Trespass to Chattels (Count XII) and Conversion**

In his Motion, Loeffel's argues that the Intellectus has failed to state a valid claim for Trespass to Chattels or for Conversion because, according to Loeffel, these claims are simply a re-characterization of a claim for breach of contract against Riptide. As discussed extensively above, Loeffel is simply wrong in his assertion.

As Loeffel has admitted, "a corporate officer who commits or participates in a tort, even if it is in the course of his duties on behalf of the corporation, may be held individually liable." Jami Mktg. Servs., Inc., supra. Indeed, as shown above, the Courts in New York have recognized the viability of a claim for conversion (which is very similar to a claim for trespass to chattels) directly against a corporate officer for his independent actions. Rajeev Sindhwani, M.D., PLLC, supra; Meese, supra; Key Bank of New York, supra.

Intellectus has adequately alleged, in paragraphs 181-185 of the Complaint, that Loeffel "intentionally, and without justification or consent, physically interfered with the use and enjoyment of property in [or rightfully in Intellectus'] possession, and that [Intellectus] was harmed thereby." See School of Visual Arts v. Kuprewicz, 771 N.Y.S.2d 804, 807 (N.Y. Sup. Ct. 2003). Accordingly, it has adequately pled a claim for Trespass to Chattels and Loeffel's motion to dismiss Count XII should be denied.

Likewise, Intellectus has adequately alleged, in paragraphs 187-190 of the Complaint, "the three basic elements of a cause of action in conversion: (1) intent; (2) interference with [plaintiff's] property rights to the exclusion of [plaintiff's] property rights; and (3) possession or the right to possession," and, thus, "has alleged a claim [] sufficient to state a cause of action in conversion." Meese, 79 A.D.2d 243-244 (holding that cause of action for conversion properly

pled in a case involving breach of contract even where "plaintiff did not plead an immediate superior right to possession to the property"). For these reasons, Loeffel's Motion to Dismiss Count XIII must fail.

## 2.    Tortious Interference With Prospective Economic Advantage (Count XIV)

To successfully plead a claim for tortious interference with prospective economic advantage, Intellectus must allege the following "(1) there is a business relationship between [the plaintiff] and a third party; (2) the defendant, knowing of that relationship, interferes with it; (3) the defendant acts with the sole purpose of harming the plaintiff, or, failing that level of malice, uses dishonest, unfair, or improper means; and (4) the relationship is injured." CA, Inc. v. Rocket Software, Inc., 579 F. Supp. 2d 355, 369 (E.D.N.Y. 2008) (quoting Goldhirsh Group, Inc. v. Alpert, 107 F.3d 105, 108-109 (2d Cir. 1997)). Intellectus has properly pled a claim for tortious interference with prospective economic advantage.

With regard to the first element, this Court has explained that a claim for tortious interference with prospective economic advantage requires an allegation of an existing or continuing relationship with a third party at the time of the defendant's tortious conduct. Henneberry v. Sumitomoto Corp. of Am., 415 F. Supp. 2d 423, 468 (S.D.N.Y. 2006). "Thus, it is not necessary for the [Plaintiffs] to prove that they would have been a party to any future contract with its customers. Rather, the tort encompasses...interference with...the opportunity of selling or buying . . . chattels or services, and any other relations leading to potentially profitable contracts." Ivy Mar Co., Inc. v. C.R. Seasons, Ltd., 1998 WL 704112 *16 (E.D.N.Y. October 7, 1998) (internal quotations omitted) (ellipses in original).

In its Complaint, Intellectus alleges that it "had valuable prospective business relationships and business opportunities with . . . the United States Department of the Navy from

which it had a reasonable expectation of continuing these relationships and deriving future economic gain" and that it

> had diligently worked for years with government agencies to build the reputation of its Software and Trademarks. These efforts ultimately resulted in a contract with Commander, Navy Installations Command ("CNIC") to be the designated 'Purchase Card' software solution for Navy Shore Installations worldwide.

(See Complaint, at ¶¶ 194, 197.) Intellectus then alleges that, "[b]y negligently mismanaging Bravera's operations", including the contract with CNIC, Loeffel has "tortiously interfered with and damaged Intellectus' existing and prospective business relationships and business opportunities." (See Complaint, at ¶¶ 196, 197.) Such allegations are sufficient to meet the first element.[5]

As for the second element, Intellectus has specifically alleged, and Loeffel does not deny, that Riptide had knowledge of the relationships at issue.[6] (See Complaint, at ¶ 195.) Indeed, it is believed that it was because of those relationships that Wilde sought to acquire Bravera.

Turning to the third element, it is generally accepted that this element is satisfied if "the defendant's conduct [ ] amount[s] to a crime or an independent tort." Carvel Corp. v. Noonan, 3 N.Y.3d 182, 190 (N.Y. 2004) (emphasis added); see also Henneberry, 415 F. Supp. 2d at 468

---

[5] Loeffel incorrectly argues that Intellectus failed to allege a specific "existing" relationship with which he interfered. (See Loeffel's Memorandum, at p. 19.) In the Complaint, Intellectus clearly identifies its relationship with the Navy and its contract with CNIC as one of the relationships with which Loeffel interfered. (See Complaint, at ¶ 197.) It makes no difference that Intellectus no longer managed the contract with the CNIC. See Volvo N. Am. Corp. v. Men's Int'l Professional Tennis Council, et al., 857 F.2d 55 (2d Cir. 1988) (permitting claim to proceed even where no particular contract alleged with which the Defendants interfered). Further, Watson has identified several other such relationships in his Declaration. (See Exhibit 1, Watson Decl., at ¶¶ 4, 13.)

[6] It necessarily follows that the Company's knowledge of the relationship between Intellectus and the Navy can be imputed to Wilde and Loeffel, its executive officers. However, should this Court determine that Riptide's knowledge cannot be imputed, the Plaintiffs respectfully request that they be permitted to amend the Complaint.

(holding that where an independent tort is alleged the third element is met). Loeffel argues that Intellectus has not alleged the sufficient level of culpability to meet the third element (see Loeffel Memorandum, at 19); however, his interpretation of what constitutes wrongful or improper means is overly restrictive. Although "wrongful" or "improper means" have been described as "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions and some degree of economic pressure . . . [d]ishonesty and unfair means are also sufficient to show wrongful means" Ivy Mar Co., Inc, 1998 WL 704112, at *16 (citations omitted).

Intellectus alleges in the Complaint that Loeffel "negligently mismanage[ed] Bravera's operations, which resulted in substantial failures of performance by Bravera" and that "[b]ecause of Bravera's connection to Intellectus and the Software, such mismanagement and the extremely high visibility of Riptide's failure to perform has precluded any future opportunity for Intellectus to utilize the Software to perform contracts with CNIC or other departments or agencies of the federal government." (Id. at ¶¶ 196-197.) Intellectus further alleges that Loeffel's "intentional[] conversion of the Derivative Works to which Intellectus was entitled further damaged Intellectus' ability to market the Software, its services and its Trademarks." (Id. at ¶ 198.) These actions constitute independent torts.

In addition, Watson elaborates in his Declaration on the scheme in which Loeffel and Wilde engaged relating to Intellectus' business contacts. Specifically, upon information and belief, Loeffel, Wilde and Riptide took over the CNIC, Metavante, Mid-Missouri Bank, and Aliant Bank contracts with no ability or intention of performing and for the sole purpose of taking the money received under the contracts and distributing these monies to themselves. (See Watson Decl., at ¶¶ 7.) Such allegations constitute misrepresentation, dishonesty and the use of unfair means on part of Defendants Loeffel, Wilde and Riptide and are sufficient to sustain a

19

cause of action for tortious interference with prospective economic advantage. See Johnson & Johnson v. Am. Nat'l Red Cross, 528 F. Supp 2d 462, 465 (S.D.N.Y. 2008) (holding that plaintiff properly pled claim for tortious interference with prospective economic advantage when plaintiff made additional allegations in motion papers to support such claim).

### 3.    Computer Fraud and Abuse Act (Count XV)

Despite admitting that he deleted the Software and Derivative Works before returning the servers in question to Intellectus, Loeffel asserts in his Motion that Intellectus has failed to plead an adequate claim under the Computer Fraud and Abuse Act (the "Act").[7]   Although Loeffel does not refer to a specific section of the Act, it is clear from the statutory language that he cites and the cases to which he refers that he is either relying upon the wrong section of the Act or is laboring under a misunderstanding of the Act.

Here, Intellectus bases its claim upon § 1030(a)(5)(A) of the Act, which provides that a violation occurs when an individual "knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer."   In the Complaint, Intellectus alleges that Riptide, Wilde and Loeffel "intentionally caused damage without authorization to Intellectus' 'protected computer'" by erasing the Software and Derivative Works. (See Complaint, at ¶ 203.) Moreover, Intellectus alleges that, as a result of Riptide's intentional deletion, "Intellectus incurred substantial damage in that it has been deprived of the use and benefit of the Derivate Works and has been forced to, at substantial cost and expense, undertake further development and enhancement of the Software." (Id. at ¶ 205.)

---

[7] Loeffel also argues that the claim under the Act is barred by the statute of limitations. As discussed above, the statute of limitations was tolled by the Defendants' fraudulent conduct.

This Court has previously held that a plaintiff sufficiently pleaded a claim under § 1030(a)(5)(A) based on a complaint that is almost identical to the Complaint in this case. In Dedalus Found. v. Banach, 2009 WL 3398595, at *1 (S.D.N.Y. Oct. 16, 2009), the plaintiff accused its employee of intentionally erasing all data evidencing her wrongdoing from the hard drives of her work computers before returning the computers to the plaintiff. This Court held that the plaintiff stated a claim under 18 U.S.C. § 1030(a)(5)(A) by alleging:

> the time-frame for [defendant's] conduct; [the defendant's] lack of authority to tamper with the computers; the specific computer hard drives [the defendant] targeted; the date [the defendant] destroyed (all the data on the drives); what information that data contained; and the costs incurred in the resulting forensic investigation.

Id. at * 4. Importantly, the Court specifically stated that alleging these facts was sufficient under the standard set forth in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Id.; see also Patrick Paterson Custom Homes, Inc. v. Bach, 586 F. Supp. 2d 1026, 1035 (N.D. Ill. 2008) (plaintiff sufficiently pled a cause of action based upon defendant's permanent deletion of files) and Alliance Int'l, Inc. v. Todd, 2008 WL 2859095, at *7 (E.D.N.C. July 22, 2008) (same).

In his Motion, Loeffel attacks the Plaintiffs' claim under the Act by stating that "[t]here are no allegations that Mr. Loeffel gained 'unauthorized access' to the servers or that Mr. Loeffel 'hack[ed]' the computer servers in question." (See Loeffel Memorandum, at p. 21.) As clearly evidenced by the plain language of the Act, a claim under § 1030(a)(5)(A) involves unauthorized *damage*; it has nothing to do with unauthorized access or "hacking." Further, Loeffel's reliance on the case of University Sports Pub. Co. v. Playmakers Media Co., 725 F. Supp. 2d 378 (S.D.N.Y. 2010) is misplaced because that case was a "hacking" case presumably brought under either § 1030(a)(1) or (2) of the Act, while the Plaintiffs' claim is a "deletion" case brought

under § 1030(a)(5)(A). Accordingly, the Plaintiffs have stated a viable claim under the Act and Loeffel's Motion to Dismiss the claim must fail.

### 4.  Fraudulent Conveyance (Counts XVI, XVII and XVIII).

#### a.  The facts submitted by Loeffel show that he was paid discretionary sums over and above his salary while Riptide had millions of dollars in outstanding debt.

In his Motion, Loeffel asserts that he was underpaid during his tenure with Riptide, and that all payments were made to him in "good faith." The documentation and declarations submitted by Loeffel, however, fail to support this position. Specifically, Loeffel claims that he was President of Riptide for a total of 10 months – from November 19, 2007 (despite the fact that his Employment Agreement stated that it was effective as of April 4, 2007), through August 6, 2008. (See Loeffel Decl., at ¶ 4; see also Exhibit A to Loeffel Decl.) Wilde asserts in his Declaration that Loeffel's salary was $250,000 per year, which amount is confirmed by Loeffel's Employment Agreement. (See Wilde Decl., at ¶ 21; see also Exhibit A to Loeffel Decl.) Accordingly, Loeffel should have been paid something less than $250,000 for his 10 months of service. However, Loeffel admits that he was paid approximately $900,000 by Riptide.[8] (See Loeffel Decl., at ¶ 19.) Importantly, this does not include the payments that were made to Loeffel relating to the acquisition of his company, Riptide Software.

At the time that Loeffel was receiving payments above and beyond his salary, Riptide was hemorrhaging money and had millions in outstanding debt, including debt to Watson and Intellectus. However, the amount of the payments to Loeffel, as well as the reason for the

---

[8] Wilde makes the bold statement in his Declaration that Loeffel's pay was "based on his performance at the company" and that he is actually owed far more than he was paid. (See Wilde Decl., at ¶¶ 21-22.) It is incomprehensible why a President of a company that lost several millions of dollars and went bankrupt within a matter of months should be paid any type of bonus or performance-based compensation over and above his salary.

payments, remains unknown at this time because that information rests solely with the Defendants. The fact that Loeffel's own documentation not only raises an issue of fact, but raises significant material questions – including how his company, Riptide Software, survived intact while Bravera and Information Intellect failed – requires that the Plaintiffs be permitted to conduct discovery as to these claims.

<b>b.    The Plaintiffs have stated valid causes of action for fraudulent conveyance.</b>

Perhaps realizing that the facts simply do not support his story, Loeffel also attempts to knock out the Plaintiffs' claims for fraudulent conveyance by asserting that they have not been adequately pled.   As shown below, the Plaintiffs have adequately pled all three of their fraudulent conveyance claims.

For claims under New York Debtor and Creditor Law ("DCL") §§ 274 and 275, the Plaintiff need only make a short and plain statement of the claims showing that they are entitled to relief. <u>Drenis v. Haligiannis</u>, 452 F. Supp. 2d 418, 428 (S.D.N.Y. 2006). The Plaintiffs did so for DCL § 274 in paragraphs 207 through 211 of the Complaint in which they allege that (1) Riptide made fraudulent transfers to Wilde and Loeffel under the guise of bonuses and increased salaries, (2) the transfers served no legitimate purpose to Riptide, but rather served only to benefit Wilde and Loeffel, themselves, and (3) as a result of the payments to Wilde and Loeffel, Riptide was left with an unreasonably small amount of capital to conduct its business. Likewise, the Plaintiffs state a valid claim under DCL § 275 in paragraphs 213-217 of the Complaint in which they allege that (1) the transfers to Loeffel and Wilde were made at a time when Riptide was already unable to pay its current debts owing to the Plaintiffs and (2) Wilde and Loeffel knew that Riptide was incurring *additional debts* to Watson under the "Agreement

and Plan of Merger" (the "Merger Agreement") and the "Senior Management and Employment Agreement" (the "Employment Agreement") and to Intellectus under the Software License.

While a claim under DCL § 276 must be meet the heightened pleading standard set forth by Fed. R. Civ. P. 9(b), courts have recognized that "actual intent" is difficult to prove. In re Sharp Int'l Corp., 403 F.3d 43 (2nd Cir. 2005). Accordingly, plaintiffs may establish actual intent by showing "circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent," known as "badges of fraud." Id. Such "badges of fraud" include:

> (1) lack or inadequacy of consideration; (2) family, friendship or close associate relationship between the parties; (3) retention of possession, benefit, or use of the property in question; (4) financial condition of the party sought to be charged both before and after transaction in question; (5) existence or cumulative effect of a pattern or series of transactions or course or conduct after the incurring of debt, onset of financial difficulties or pendency or threat of suits by creditors; and (6) general chronology of the events and transactions under inquiry.

In re Flutie New York Corp., 310 B.R. 31 (Bankr. S.D.N.Y. 2004). Another recognized indication of fraud is a transfer for no consideration when the transferor and the transferee know of the claims or creditors and know that creditors cannot be paid. In re Bennett Funding Group, Inc., 220 B.R. 743, 755 (Bankr. N.D.N.Y. 1997).

Plaintiffs have sufficiently pleaded facts that demonstrate at least three "badges of fraud" that evidence the Defendants' actual intent to defraud Plaintiffs. First, Plaintiffs have established the close relationship between Riptide and Loeffel, Riptide's President. (See Complaint, at ¶ 8.) Second, Plaintiffs have alleged that, at the time of the transfers in question, Riptide was substantially indebted to both Plaintiffs and other creditors. (Id. at ¶¶ 38, 86.) Third, Plaintiffs alleged that Riptide, the transferor, and Loeffel, the transferee, knew that Plaintiffs were not

24

being paid. (Id. at ¶¶ 91.) Accordingly, the Plaintiffs have adequately pled all three of their counts for fraudulent conveyance and Loeffel's Motion to Dismiss those claims should be denied.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs Christopher Watson and Intellectus, LLC respectfully request that the Court deny Defendant Phillip Loeffel's Motion to Dismiss.

Respectfully submitted,

Nicholas Fortuna (NF-9191)
Megan J. Muoio (JM-6121)
Allyn & Fortuna
200 Madison Avenue, Fifth Floor
New York, New York  10016

James E. Edwards, Jr. (admitted *pro hac vice*)
Anthony F. Vittoria (admitted *pro hac vice*)
Kelly M. Preteroti (admitted *pro hac vice*)
Ober, Kaler, Grimes & Shriver
A Professional Corporation
100 Light Street
Baltimore, Maryland  21202

*Attorneys for Plaintiffs,*
*Christopher Watson and Intellectus, LLC*